Argued and submitted July 29, 1999, reversed in part; remanded for resentencing; otherwise affirmed November 8, 2000

# STATE OF OREGON,
*Respondent,*

*v.*

# ALAN GIRO TELLEZ,
*Appellant.*

## (970634296; CA A99686)

14 P3d 78

Mary M. Reese, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Janet Klapstein, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Douglas F. Zier, Assistant Attorney General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was charged with possession of a controlled substance, ORS 475.992(4)(a), delivery of a controlled substance, ORS 475.992(1)(a), and manufacture of a controlled substance, ORS 475.992(1)(a). After a trial to the court, defendant was convicted of all three charges. On appeal, defendant challenges the sufficiency of the evidence to support the conviction for manufacture of a controlled substance. As explained below, we agree with defendant that the state presented insufficient evidence that manufacture of a controlled substance had taken place. We reverse defendant's conviction for manufacture of a controlled substance and remand for resentencing.

On review, we view the evidence in the light most favorable to the state to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). Defendant and Hernandez were seen by Portland police officers in a part of Portland known for its heavy volume of drug trafficking. They disappeared for a brief period of time into a doorway. When they emerged, the officers observed Hernandez adjusting his belt, which the officers testified is a common activity of people who have concealed drugs. Shortly thereafter, Hernandez had contact with two women, while defendant walked parallel to them. Hernandez pulled out a plastic-wrapped package containing what the officers believed to be a ball of tar heroin about the size of a golf ball. Hernandez and the women then went to a nearby telephone booth. Defendant stood close by and looked up and down the street, as well as into the telephone booth. Hernandez put the ball of heroin on a steel shelf in the telephone booth, took out a pocket knife, and cut a small piece of heroin from the ball. Hernandez gave the small piece to the women, who gave him money in return. Defendant then waved to somebody down the street, and, shortly thereafter, a car pulled up to the curb. Hernandez and defendant got into the car. Officers stopped the car several minutes later. Although the ball of tar heroin was not recovered, the officers found traces of tar heroin on Hernandez's pocket knife and

also found trace amounts of heroin on plastic wrappers and spoons in the vehicle.

The state's theory of the case was that defendant aided and abetted Hernandez in the crimes of possession, delivery, and manufacture of a controlled substance. Defendant does not challenge the sufficiency of the evidence that he aided and abetted in the possession and delivery. He argues, however, that the state presented no evidence of manufacturing. The state argued to the trial court that defendant aided and abetted in "cutting up of heroin and repackaging." The trial court agreed that that constituted manufacture of a controlled substance.

■ On appeal, defendant argues that the evidence showed that Hernandez unwrapped the ball of heroin, cut off a small piece, and handed the piece to the women, but no evidence was presented that he rewrapped or repackaged the heroin before delivering it. The state asserts in response that the act of slicing off an individual-use portion of the tar heroin from a larger quantity constitutes "packaging" it into a different form for sale and that that constitutes manufacture of a controlled substance.[1]

ORS 475.992(1) makes it unlawful for any person to manufacture a controlled substance. ORS 475.005(14) provides the following definition:

> " 'Manufacture' means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, *and includes any packaging or repackaging of the substance* or labeling or relabeling of its container, [with certain exceptions not relevant to this case]." (Emphasis added.)

The sole issue in this case is whether the acts of unwrapping a ball of tar heroin, slicing off a piece, and handing it to another person constitute the crime of manufacture of a controlled substance. Since no extraction or chemical

---

[1] We note that the state does not argue that closing the material used to contain a controlled substance constitutes manufacturing.

synthesis occurred, the question reduces to whether those actions constitute "packaging or repackaging of the substance" as that phrase is used in ORS 475.005(14). We note at the outset that there is no evidence that Hernandez placed the small piece of tar heroin into any kind of container before handing it to the women. Thus, the question is *not* whether taking a piece of heroin from a large package and placing it into a smaller package constitutes manufacture of a controlled substance but simply whether unwrapping the larger portion and taking out a smaller portion constitutes "manufacture of a controlled substance" by "packaging or repackaging."

Our goal in interpreting this statute is to discern the legislature's intent. The best evidence of legislative intent is the text of the statutory provision itself. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In considering the text, we generally give words of common usage their plain, natural, and ordinary meaning. *Id.* at 611. *Webster's Third New Int'l Dictionary*, 1618 (unabridged ed 1993), defines "packaging" as:

> "**1:** an act or instance of packing ‹industrial ~ is concerned with transit more than with trade—*Modern Packaging*› ‹the official lot-test number must . . . accompany the dyes through all subsequent ~s—*For Instance*› ‹a new ~ of the idea—*Newsweek*› **2:** package 3a ‹developing marketable products and their ~s—Ben Nash›."

The definition of "package," to which the second part of that definition of "packaging" refers, is

> "a covering wrapper or container ‹nature gave the banana a good ~ —*advt*›; *specif* : a protective unit for storing or shipping a commodity ‹designing a ~ that attracts the eye of the customer and at the same time protects the merchandise—*Christian Science Monitor*›." *Id.* at 1617.

Similarly, "repackage" is defined as "to package again or anew; *specif:* to put into a more efficient or attractive form." *Id.* at 1923. Read together, those definitions carry a connotation of preparing goods for delivery by enclosing them in a container or wrapper, either to protect the goods or to present them in a manner attractive to a consumer. There is nothing about opening a container, taking out a small portion

of its contents, and handing that portion to another person that falls within the normal usage of the term "packaging or repackaging." Nothing in the above-quoted definitions supports the state's theory that the act of slicing off a portion of a substance for the purpose of selling that smaller portion involves "packaging or repackaging," at least in the absence of evidence that the smaller portion was then enclosed in a package before delivery to the consumer. We conclude that the plain meaning of the terms "packaging or repackaging" supports defendant's argument.

■   However, we do not view the text in a vacuum; we must consider the context of the language at issue. Context includes other provisions of the same statute, as well as related statutes. *PGE*, 317 Or at 611. ORS 475.992 makes unlawful the possession, distribution, and manufacture of controlled substances. The classification of those offenses as various levels of felony or misdemeanor varies depending on the nature of the controlled substance. The classification further depends on whether the crime involved possession or whether it involved manufacture or delivery. Regardless of which controlled substance is involved, possession of that substance is a lower level of felony, misdemeanor, or violation than is delivery or manufacture of the same substance. Thus, it is clear that the legislature intended manufacture and delivery of a controlled substance to be greater crimes than possession of a controlled substance. Also, at least under some circumstances, the legislature has chosen to punish delivery of a controlled substance less than it has chosen to punish manufacture. *See, e.g.,* ORS 475.992(2)(b) (where delivery of less than one ounce of marijuana for no consideration is not a crime but a violation).

ORS 475.996 provides further relevant context. That statute sets forth the criteria for determining where manufacture or delivery of a controlled substance should be ranked on the sentencing guidelines grid. In general, where the manufacture or delivery involves substantial quantities, or where it is proved to be part of a commercial drug operation, the penalties will be harsher. Manufacture or delivery can be classified at crime category 8, 6, or 4, depending on those circumstances. Possession of a controlled substance, by comparison, is generally ranked at crime category 1, the lowest crime category. ORS 475.996(3)(b).

With that statutory context in mind, we look carefully at what the state is arguing in this case. The state asserts that "Hernandez sliced off an individual-use portion of the tar heroin from his larger quantity, thus packaging it into a different form for sale." The state is asserting either that the act of slicing the controlled substance or the intent to sell the controlled substance, or perhaps both, constitutes "manufacture." To the extent that the state is arguing that taking an individual-user portion of a controlled substance from a larger quantity constitutes "manufacture," we are unable to agree that the legislature intended such a result. It is safe to assume that the legislature knew that many people who possess controlled substances use those substances in individual-user portions. It seems unlikely, to say the least, that, having provided lesser penalties for possession of a controlled substance, the legislature intended that every possessor of a controlled substance who took an individual-user sized portion from his or her "stash" for his or her own consumption would be guilty of the crime of manufacture of a controlled substance. Similarly, to the extent that the state's argument emphasizes not the taking of the individual-user sized portion, but the *selling* of it (or the intention of selling it), that act constitutes delivery (or attempted delivery), which is a distinct crime from manufacture of a controlled substance. In short, we find nothing in the context of ORS chapter 475 that would suggest that the legislature intended the term "packaging or repackaging" to have any meanings other than the common meanings quoted above.

■ "Packaging or repackaging" necessarily involves, at the very least, putting something into a package. While there is undisputed evidence that Hernandez possessed a controlled substance and that he delivered a controlled substance, there is no evidence that he packaged or repackaged a controlled substance.

Conviction for manufacture of controlled substance reversed; remanded for resentencing; otherwise affirmed.