**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GONZALO BANUELOS DOMINGUEZ, *Petitioner*, | No. 18-72731 |
| v. | Agency No. A013-591-616 |
| WILLIAM P. BARR, Attorney General, *Respondent.* | ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2020[*]
Portland, Oregon

Filed July 21, 2020
Amended September 18, 2020

Before: Jay S. Bybee and Lawrence J. VanDyke, Circuit
Judges, and Kathleen Cardone,[**] District Judge.

Order;
Opinion by Judge Cardone

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

## SUMMARY[***]

### Immigration

The panel filed: 1) an order denying petitioner's motion requesting that its prior opinion be depublished and granting in part the alternative request to amend the opinion; and 2) an amended opinion dismissing in part and denying in part Gonzalo Banuelos Dominguez's petition for review of a decision of the Board of Immigration Appeals. In the amended opinion, the panel held that: (1) Oregon Revised Statutes ("ORS") § 475.992(1)(a), which criminalizes manufacture or delivery of a controlled substance, is divisible as between its "manufacture" and "delivery" terms; (2) a conviction under that statute is an aggravated felony; (3) the BIA did not err in finding Dominguez's § 475.992(1)(a) conviction to be a particularly serious crime barring withholding of removal; and (4) the notice provided to Dominguez of his removal hearing was sufficient to vest the immigration judge with jurisdiction.

At the time of Dominguez's conviction, ORS § 475.992(1)(a) made it unlawful to "manufacture or deliver" a controlled substance. Applying the three-step process set out in *Descamps v. United States*, 570 U.S. 254 (2013), the panel first explained that the relevant generic offense—an aggravated felony under 8 U.S.C. § 1101(a)(43)(B)—includes drug trafficking crimes, which include felony offenses under the Controlled Substances

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Act. One such felony offense is manufacture of a controlled substance.

At the second step, the panel explained that, under *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017), ORS § 475.992(1)(a) is not a categorical match to a federal drug trafficking crime because the Oregon statute's definition of "deliver" includes solicitation, but the Controlled Substances Act's definition of "deliver" does not, making the Oregon statute broader than the federal generic crime.

At the third step, the panel concluded that ORS § 475.992(1)(a) is divisible as between its "manufacture" and "deliver" terms such that the modified categorical approach applied. The panel explained that the statute and its interpretation by Oregon courts demonstrate that the phrase "manufacture or deliver" lists alternative elements defining multiple offenses—as opposed to alternative means of committing a single offense.

Applying the modified categorical approach, the panel concluded that Dominguez's § 475.992(1)(a) conviction was a categorical match to an aggravated felony drug trafficking offense. The panel explained that Dominguez was charged with manufacture of marijuana under § 475.992 and that manufacturing marijuana is a felony offense under the Controlled Substances Act. The panel also explained that the elements of the Oregon offense are the same as those of the federal manufacturing offense, except that the Oregon definition of "manufacture" includes the word "conversion." However, the panel concluded that there was not a realistic probability that Oregon prosecutes conduct as "conversion" that is not covered by the Controlled Substances Act. Accordingly, the panel concluded that Dominguez had been convicted of an aggravated felony that rendered him

removable and ineligible for asylum and cancellation of removal.

Next, the panel held that the BIA did not err in concluding that Dominguez's conviction was a particularly serious crime that made him ineligible for withholding of removal, explaining that the BIA properly applied the applicable standard set out in *Matter of Frentescu*, 18 I. & N. Dec. 244 (B.I.A. 1982).

Finally, the panel rejected Dominguez's contention that his notice to appear, which did not provide the date and time of his first hearing, was insufficient to vest the immigration judge with jurisdiction, explaining that this argument was squarely foreclosed by *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019).

---

## COUNSEL

Jeffrey C. Gonzales, Gonzales Gonzales & Gonzales, Portland, Oregon, for Petitioner.

Joseph H. Hunt, Assistant Attorney General; Jennifer J. Keeney, Assistant Director; Lindsay B. Glauner, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

---

## ORDER

The Petitioner's Motion for Miscellaneous Relief (Docket Entry No. 33) requesting the opinion be depublished is **DENIED** but the alternative request to amend is **GRANTED** in part.

The opinion filed on July 21, 2020, and published at 965 F.3d 1091 is **AMENDED** by the opinion filed concurrently with this Order.

On page 19 of the slip opinion, after the sentence "Oregon law incorporates the federal schedule of controlled substances. Or. Rev. Stat. § 475.005(6); *State v. Ness*, 635 P.2d 1025, 1029 (Or. Ct. App. 1981)," the following footnote is added:

> While incorporating the federal schedule, Oregon law further authorizes the State Board of Pharmacy to modify or add to Oregon's schedules of controlled substances. Or. Rev. Stat. § 475.035; *State v. Henry*, 840 P.2d 1335, 1336 (Or. App. 1992); *State v. Eells*, 696 P.2d 564, 567 (Or. App. 1985). Because Petitioner does not argue that the Oregon definition of "controlled substance" is distinct from the federal definition, this Court does not address that issue.

**OPINION**

CARDONE, District Judge:

Petitioner Gonzalo Banuelos Dominguez was convicted under Oregon law for manufacturing marijuana, a violation of Oregon Revised Statutes ("ORS") § 475.992(1)(a), and subsequently charged with removability. An Immigration Judge ("IJ") found that Dominguez was removable as charged because his conviction constituted an "aggravated felony," and Dominguez was ineligible for withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT") because he committed a "particularly serious crime." The Board of Immigration Appeals ("BIA") affirmed, and it also denied Dominguez's motion to terminate proceedings based on deficient notice. Dominguez now petitions for review of the BIA's decision.

We consider as a matter of first impression whether ORS § 475.992(1)(a) is divisible as between its "manufacture" and "delivery" terms. We find that it is, and we conclude that the offense of conviction constitutes an aggravated felony. Further, we hold that the BIA did not abuse its discretion in finding Dominguez's offense to be a particularly serious crime and that the notice provided to Dominguez was sufficient to vest the IJ with jurisdiction. Accordingly, we deny the petition.

**FACTUAL AND PROCEDURAL HISTORY**

Dominguez is a native and citizen of Mexico, now sixty-three years old, who was admitted to the United States as a lawful immigrant in 1963, a lawful permanent resident since at least 1969. In August 2002, Dominguez was indicted on charges of "manufacture of a schedule 1 controlled

substance (a felony; ORS 475.992(1A)).ʺ  Count One of the single-count Indictment alleged that Dominguez manufactured marijuana.  Dominguez entered a guilty plea and was convicted of the charges.

On March 20, 2009, the Department of Homeland Security (ʺDHSʺ) filed a Notice to Appear (ʺNTAʺ) with the Portland immigration court, initiating removal proceedings against Dominguez.  The government charged Dominguez as removable under § 237(a)(2)(A)(iii) of the INA for conviction of an aggravated felony.  Specifically, the NTA alleges, ʺYou were, on October 7, 2002, convicted . . . for the offense of Manufacture/Delivery of a Controlled Substance, to wit: Marihuana, in violation of ORS 475.9921A.ʺ  The NTA ordered Dominguez to appear on ʺa date to be setʺ and at ʺa time to be set.ʺ

One week later, DHS filed a Form I-261, bringing additional charges of removability.  The government alleged that Dominguez was also removable under § 237(a)(2)(B)(i) of the INA for conviction of an offense ʺrelating to a controlled substance.ʺ  The same day, the Immigration Court sent Dominguez a ʺNotice of Hearing in Removal Proceedings,ʺ which stated that an initial hearing was set for June 23, 2009, at 10:00 A.M.

Dominguez appeared before an IJ for his initial hearing in June 2009.  The removal hearing continued on November 5, 2009, when the court issued a ruling from the bench that Dominguez's conviction constituted an aggravated felony, and therefore Dominguez was ineligible for asylum, adjustment of status, and cancellation of removal.  On March 20, 2012, removal proceedings continued in another hearing, this one considering Dominguez's claims for withholding of removal under the INA and the CAT.  The same day, the court issued an ʺOral Decision of the Immigration Judge,ʺ

pretermitting Dominguez's withholding application and denying his CAT claim.

Dominguez appealed the IJ's decision to the BIA on April 10, 2012. On September 17, 2013, the BIA found "the [IJ's] decision is insufficient to permit meaningful appellate review," and remanded the case to the IJ to "issue a new decision with additional findings." On April 2, 2014, the IJ issued a written opinion.

The IJ made an adverse credibility determination, finding that Dominguez's testimony regarding the conduct underlying his criminal conviction was "logically implausible," and that some of Dominguez's in-court testimony contradicted his prior written declaration. Considering the first charge of removability, the IJ found that ORS § 475.992(1) is divisible between "manufacture" and "delivery."[1]  Implicitly applying the modified categorical approach, the IJ found Dominguez was convicted of a manufacturing offense and was therefore removable because manufacturing a controlled substance is an aggravated drug trafficking offense. The IJ also found Dominguez removable on the second charge of removability, concluding that his conviction was "related to a controlled substance" based on the plain language of the statute. Based on the finding of removability, the IJ found Dominguez's asylum application statutorily barred.

---

[1] At the time of Dominguez's conviction, ORS § 475.992(1)(a) provided: "Except as authorized by ORS 475.005 to 475.285 and 475.940 to 475.999, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to: (a) A controlled substance in Schedule I, is guilty of a Class A felony." Or. Rev. Stat. § 475.992(1)(a) (2002).

Then, the IJ denied Dominguez's withholding of removal application. The IJ found that, based on the underlying circumstances, Dominguez's conviction constituted a particularly serious crime, rendering withholding of removal under the INA and CAT unavailable. The IJ noted that, alternatively, she would deny Dominguez's withholding application for lack of a nexus to a protected ground, even absent the aggravated felony and particularly serious crime bar. Finally, the IJ denied Dominguez's CAT claim for deferral of removal as well, finding Dominguez had not shown it was more likely than not that he would be tortured in Mexico.

On April 28, 2014, Dominguez appealed the IJ's decision to the BIA. While the parties' briefing was pending, in February 2017, Dominguez filed a supplemental brief requesting remand to the IJ based on *Sandoval v. Sessions*, 866 F.3d 986 (9th Cir. 2017). The *Sandoval* decision concerns the divisibility of the statute of Dominguez's conviction, ORS § 475.992(1)(a), and the BIA ordered the parties to file supplemental briefs addressing the case in February 2018. In July 2018, Dominguez filed a motion to terminate proceedings based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). Dominguez argued that, under *Pereira*, the lack of a date and time for the initial hearing in his NTA was fatal to the IJ's jurisdiction over his case.

On September 11, 2018, the BIA issued its decision. As to removability, the BIA found that Dominguez only contested the aggravated felony basis for removal, waiving any challenge to removability based on a conviction related to a controlled substance.[2] On the aggravated felony charge,

---

[2] Dominguez does not challenge this determination on appeal.

the BIA affirmed the IJ's opinion that the modified categorical approach applies to § 475.992(1)(a) because the statute is divisible as between "manufacture" and "delivery," rejecting Dominguez's argument that *Sandoval* controls the case. Applying that approach, the BIA also affirmed that Dominguez's manufacturing offense is a categorical match to the generic offense of a "drug trafficking crime." Next, the BIA agreed with the IJ that Dominguez's offense was a particularly serious crime. And, the BIA found that Dominguez failed to challenge the IJ's denial of his CAT claim for deferral of removal. Finally, the BIA denied Dominguez's motion to terminate proceedings. The BIA found that even an NTA lacking a date and time of the initial hearing serves to vest the IJ with jurisdiction, and the Supreme Court's holding in *Pereira* does not require a different result.

Dominguez timely petitioned for review of the BIA's decision.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over Dominguez's appeal under 8 U.S.C. § 1252. "We lack jurisdiction to review 'any final order of removal against an alien who is removable'" for committing an aggravated felony, retaining jurisdiction only to review jurisdictional issues, questions of law, and constitutional claims. *Mairena v. Barr*, 917 F.3d 1119, 1123 (9th Cir. 2019) (per curiam) (citation omitted). Likewise, we lack jurisdiction over the BIA's determination that a petitioner committed a particularly serious crime, retaining jurisdiction only to determine whether the BIA applied the proper legal standard. *Flores-Vega v. Barr*, 932 F.3d 878, 884 (9th Cir. 2019). We have jurisdiction to review the BIA's denial of a motion to terminate proceedings based on a ground other than the petitioner's criminal conviction. *See*

*Flores v. Barr*, 930 F.3d 1082, 1086–87 (9th Cir. 2019) (per curiam).

We review purely legal questions de novo and review a denial of a motion to terminate for abuse of discretion. *Aguilar Fermin v. Barr*, 958 F.3d 887, 891–92 (9th Cir. 2020).

## DISCUSSION

Dominguez challenges three conclusions reached by the BIA: (1) the aggravated felony finding, (2) the particularly serious crime finding, and (3) the denial of his motion to reopen proceedings. We address each in turn.

## A

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." *Flores-Vega*, 932 F.3d at 882 (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)). Aliens removable on aggravated felony grounds are ineligible for asylum and for cancellation of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i), 1229b(b)(1)(C). Dominguez argues that his conviction under ORS § 475.992(1)(a) is not an aggravated felony under our precedent.

We determine whether Dominguez's manufacture of marijuana conviction is an aggravated felony by applying the three-step process set out in *Descamps v. United States*, 570 U.S. 254 (2013). *See Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015). First, applying the categorical approach established by *Taylor v. United States*, 495 U.S. 575 (1990), we compare the elements of the offense of the petitioner's conviction with the elements of a generic offense—"*i.e.*, the offense as commonly understood."

*Sandoval*, 866 F.3d at 988. Importantly, this step considers only statutory definitions, not the actual conduct underlying the conviction. *Descamps*, 570 U.S. at 261 ("The key, we emphasized, is elements, not facts."). When the elements of the state offense are the same as, or narrower than, those of the generic offense, the petitioner's conviction is a categorical match. *Id.* However, if the elements of the state offense are broader than those of the generic—meaning the state offense criminalizes conduct that the federal offense does not—then there is no categorical match. *See Villavicencio v. Sessions*, 904 F.3d 658, 664 (9th Cir. 2018).

When the state statute is "overbroad," we turn to the second step to determine whether the statute is divisible. *Lopez-Valencia*, 798 F.3d at 867–68. A statute is divisible if it sets out elements of the offense in the alternative, effectively containing multiple possible offenses. *Romero-Millan v. Barr*, 958 F.3d 844, 847 (9th Cir. 2020). A statute is not divisible if it only lists alternative methods of committing a single crime. *Id.* If the statute is not divisible, the inquiry ends; "a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Lopez-Valencia*, 798 F.3d at 868 (quoting *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014)). Only when an overbroad statute is divisible do we proceed to the final step. *Id.*

If we reach this step, we apply the "modified categorical approach." *See Villavicencio*, 904 F.3d at 664. Under this approach, we examine a limited class of documents—such as the charging instrument, jury instructions, jury verdict, or plea agreement—"to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 262. Having identified the underlying offense of conviction, we may then

determine whether those elements are a match to the generic federal offense. *See Rendon v. Holder*, 764 F.3d 1077, 1083 (9th Cir. 2014) (explaining that the modified categorical approach serves the limited purpose of "helping to implement" the categorical analysis (alterations omitted)).

**1**

Dominguez argues that, based on our decision in *Sandoval*, ORS § 475.992(1)(a) is overbroad and indivisible and therefore his conviction is not a categorical match to an aggravated felony offense.

At the first step, applying the categorical approach, we must determine the definition of the generic offense; in this case, an aggravated felony. *See Sandoval*, 866 F.3d at 989. The INA's definition of an aggravated felony encompasses any "illicit trafficking in a controlled substance . . . including a drug trafficking crime." 8 U.S.C. § 1101(a)(43)(B). A drug trafficking crime is defined as "any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2).

The Controlled Substances Act, in turn, makes it unlawful to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). And, a felony is "an offense punishable by more than one year under federal law." *Sandoval*, 866 F.3d at 989; *see also* 18 U.S.C. § 3559. In sum, the aggravated felony generic offense includes drug trafficking crimes, which include felony Controlled Substances Act offenses.

Having defined the generic offense, we determine whether the statutory offense underlying Dominguez's conviction is a categorical match. Dominguez was

convicted of violating ORS § 475.992(1)(a).  That provision makes it unlawful to "manufacture or deliver a . . . controlled substance in Schedule I."  Or. Rev. Stat. § 475.992(1)(a) (2002).[3]

We applied the categorical approach to a conviction under § 475.992(1)(a) in *Sandoval*.  866 F.3d at 988–93. There, we considered whether a conviction for delivery of heroin under § 475.992(1)(a) constituted an aggravated felony.  *Id.*  We held that an offense under § 475.992(1)(a) is not a categorical match to a drug trafficking crime under the INA because the Oregon statute's definition of "deliver" includes solicitation, but the Controlled Substances Act's definition of "deliver" does not, making the Oregon statute broader than the federal generic crime.  *Id.* at 989–93.  As a result, Dominguez's offense under § 475.992(1)(a) does not qualify as an aggravated felony under the categorical approach.  *See id.*

But the analysis does not end there.  While § 475.992(1)(a) in its entirety is not a categorical match to a drug trafficking crime, we must determine whether the overbroad statute is divisible.  *See Lopez-Valencia*, 798 F.3d at 867–68.

## 2

The BIA found that § 475.992(1)(a) is divisible as between its "manufacture" and "deliver" terms.  Dominguez

---

[3] The statute has since been renumbered as § 475.752, though its language remains the same.  *Compare* Or. Rev. Stat. § 475.752(1)(a) (2019) *with* Or. Rev. Stat. § 475.992(1)(a) (2002).  Regardless, when applying the categorical approach, we consider the law that the petitioner was convicted of violating as it applied at the time of conviction.  *See McNeill v. United States*, 563 U.S. 816, 820 (2011).

argues that the BIA's conclusion is precluded by *Sandoval*. However, the *Sandoval* court did not consider the divisibility issue decided by the BIA. Rather, the *Sandoval* court merely held that the Oregon statute's definition of "deliver" was not divisible as between solicitation and attempted delivery, precluding application of the modified categorical approach in that case. 866 F.3d at 993–94. Nowhere did the *Sandoval* court consider the divisibility of "manufacture" from "deliver" in ORS § 475.992(1)(a). Therefore, we review the BIA's determination that the statute is divisible between these terms de novo. *See id.* at 988.

Looking to the plain language of the statute, § 475.992 uses disjunctive language to list two possible ways to commit a violation: manufacturing *or* delivering. *See* Or. Rev. Stat. § 475.992(1) ("[I]t is unlawful for any person to manufacture or deliver a controlled substance."). In *Mathis v. United States*, the Supreme Court explained that the first task when faced with such a statute is to determine whether its listed items are alternative elements—defining multiple offenses—or alternative means—defining multiple ways of committing a single offense. 136 S. Ct. 2243, 2251–54, 2256 (2016). If there are alternative elements, the statute is divisible between its multiple offenses and the modified categorical approach is applied to determine which offense the petitioner was convicted of. *Id.* at 2256. If there are merely alternative means, a reviewing court cannot look to which of the alternatives was at issue, but must apply only the categorical approach, comparing the elements in their entirety to the generic offense. *Id.*

To resolve this threshold inquiry—elements or means— the reviewing court looks to whether state law answers the question. *Id.* A state court decision, or the statute itself, may resolve the issue. *Id.* For example, if the statute's listed

alternatives carry different punishments, they must be elements. *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Or, some statutes specify which provisions must be charged, identifying elements, while others may specify that listed alternatives are only "illustrative examples," identifying means. *Id.* If state law fails to resolve the inquiry, courts may then take a "peek" at the record of the prior conviction for "the sole and limited purpose of determining whether the listed items are elements of the offense." *Id.* at 2256–57 (alterations omitted) (quoting *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc)). If ambiguity remains after consulting state law and the record of conviction, then the conviction is not divisible nor a categorical match to the generic offense. *Id.* at 2257 (citing *Shepard v. United States*, 544 U.S. 13, 21 (2005)).

Here, the statute and its interpretation by Oregon courts demonstrate that the phrase "manufacture or deliver" in § 475.992(1)(a) lists alternative elements, not means. The statute contains separate definitions of each term. *Compare* Or. Rev. Stat. § 475.005(8) (defining "deliver" and "delivery"), *with* Or. Rev. Stat. § 475.005(15) (defining "manufacture"). And, "at least under some circumstances, the legislature has chosen to punish delivery of a controlled substance less than it has chosen to punish manufacture." *State v. Tellez*, 14 P.3d 78, 80–81 (Or. Ct. App. 2000) (citing Or. Rev. Stat. § 475.992(2)(b)). At the time *Tellez* was decided—and the time of Dominguez's conviction— § 475.992 made both delivery and manufacture of marijuana a Class A felony. *See* Or. Rev. Stat. § 475.992(1)(a) (2000); Or. Rev. Stat. § 475.992(1)(a) (2002). But, § 475.992(2)(a) excepted delivery of marijuana as a Class B felony, and delivery of less than an ounce of marijuana, for no

consideration, as a Class A misdemeanor.[4]  *See* Or. Rev. Stat. § 475.992(2)(a)–(b) (2000); Or. Rev. Stat. § 475.992(2)(a)–(b) (2002).  No such exceptions applied to equivalent manufacture of marijuana violations.  *See* Or. Rev. Stat. § 475.992(2)(a)–(b) (2000); Or. Rev. Stat. § 475.992(2)(a)–(b) (2002).  That manufacture and delivery could potentially carry different punishments strongly indicates they are alternative elements defining distinct offenses.  *See Mathis*, 136 S. Ct. at 2256.

Oregon case law tends to confirm this conclusion.  In *Tellez*, the Oregon Court of Appeals rejected the government's argument that "the act of slicing off an individual-use portion of . . . tar heroin from a larger quantity" amounts to "packaging," and therefore "manufacture."  14 P.3d at 79, 81.  In reaching that conclusion, the court observed: "[T]o the extent that the state's argument emphasizes not the taking of the individual-user sized portion, but the *selling* of it (or the intention of selling it), that act constitutes delivery (or attempted delivery), which is a distinct crime from manufacture."  *Id.* at 81.  This statement, albeit in dicta, provides at least some indication of how Oregon courts understand the structure of § 475.992.

Providing further confirmation, Oregon courts allow convictions for both manufacture and delivery arising out of the same conduct.  For example, in *State v. Morgan*, 951 P.2d 187 (Or. Ct. App. 1997), the Court of Appeals

---

[4] The sentencing provisions analyzed in *Tellez* were subsections of ORS § 475.992 at the time and continued to be in 2002 when Dominguez was convicted.  *See* Or. Rev. Stat. § 475.992(2)(a)–(b) (2002).  Today, an even broader version of this exception remains in effect but is codified at ORS § 475B.349(1)–(3)(a) (2019).

upheld an indictment that charged the defendants with "one count each of delivery, possession and manufacture of a controlled substance." *Id.* at 188 & n.2. The first count of the indictment charged delivery of marijuana and the third count charged manufacture, specifying that each charge arose from the same acts. *Id.* at 188 n.2. The court noted it was "uncontested in this case that each of the three counts of the indictment alleges all of the essential elements of the relevant offense and uses the language of the appropriate subsection of ORS 475.992." *Id.* at 189. Under Oregon law, "[w]hen the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." Or. Rev. Stat. § 161.067(1). If the phrase "manufacture or deliver" merely listed alternative means of violating § 475.992(1)(a), then the separate manufacturing and delivery charges in *Morgan* could not be sustained as separately punishable offenses.

There are numerous Oregon cases like *Morgan* that affirmed convictions for both delivery and manufacture that arise out of the same conduct. *See, e.g.*, *State v. Sanders*, 226 P.3d 82, 83 (Or. Ct. App. 2010); *State v. Russell*, 60 P.3d 575, 575 (Or. Ct. App. 2002); *State v. Wright*, 945 P.2d 1083, 1083 (Or. Ct. App. 1997). We have previously found such evidence probative of divisibility. *See, e.g.*, *United States v. Martinez-Lopez*, 864 F.3d 1034, 1040–43 (9th Cir. 2017) (en banc) (finding statute divisible because case law showed that "defendants are routinely subjected to multiple convictions under a single statute for a single act as it relates to multiple controlled substances"). Here, too, because Oregon defendants are routinely subjected to multiple convictions under a single statute where manufacture and

delivery arise from the same conduct, the statute's alternative provision lists elements, not means. *See id.*

Furthermore, even if these state law resources do not provide a sufficiently definitive answer, then a "peek" at the so-called *Shepard* documents[5] follows and provides further confirmation. *See Mathis*, 136 S. Ct. at 2256. The charging documents are an information, followed by an indictment, charging "Count 1: Manufacture of a Schedule I Controlled Substance (A Felony; ORS 475.992(1A))." The factual allegation is that "[t]he defendant, on or about 08/01/2002, in the County of Hood River and State of Oregon, did unlawfully and knowingly manufacture marijuana, a controlled substance." The only other *Shepard* document in the record is the final judgment of conviction entered upon Dominguez's guilty plea. The judgment states that Dominguez was convicted on Count One of the indictment. However, the judgment lists the charge as "Count 1: Manu/Del Cntrld sub-SC 1." Thus, the information and indictment "indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each of which goes toward a separate crime." *Id.* at 2257. The same cannot be said, however, of the judgment.

Ultimately, between the statute itself and relevant state court decisions, state law answers the elements versus means question here. The two listed alternatives are defined separately in the statute and, in narrow circumstances, could

---

[5] The *Shepard* court held that a reviewing court cannot look to police reports or complaint applications when determining whether the modified categorical approach applies. 544 U.S. at 16. Instead, the review of the record of conviction is limited to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.*

be punished disparately. Decisions from Oregon's intermediate courts of review have referred to the alternatives as distinct crimes and approve of parallel convictions for both "manufacture" and "delivery" arising out of the same conduct. And, Dominguez points to nothing aside from *Sandoval*—which considered a distinct and inapplicable divisibility issue—to argue § 475.992's indivisibility. Even if a peek at the record were required, the charging documents refer to one of the alternatives to the exclusion of the other, though the judgment of conviction refers to both. Therefore, we are sufficiently certain that "[a] prosecutor charging a violation of [§ 475.992] must . . . select the relevant element from its list of alternatives" and "the jury . . . must then find that element, unanimously and beyond a reasonable doubt." *Descamps*, 570 U.S. at 272. Accordingly, the statute is divisible as between manufacture and delivery, and we proceed to apply the modified categorical approach.

**3**

Under the modified categorical approach, we look to the record to determine the offense of conviction. *See Mathis*, 136 S. Ct. at 2249. The charging documents here specify that Dominguez was charged with manufacture under § 475.992. The elements of a manufacture offense under § 475.992(1)(a) are (1) knowingly participating in (2) the manufacture (3) of a Schedule I controlled substance. *See State v. Miller*, 103 P.3d 112, 116 (Or. Ct. App. 2004) (citing *State v. Saude*, 769 P.2d 784, 785 (Or. 1989)). Oregon law incorporates the federal schedule of controlled substances. Or. Rev. Stat. § 475.005(6); *State v. Ness*, 635 P.2d 1025,

1029 (Or. Ct. App. 1981).**[6]** "Manufacture" means, in relevant part, "the production, preparation, propagation, compounding, conversion or processing of a controlled substance." *State v. Brown*, 807 P.2d 316, 319 (Or. Ct. App. 1991) (quoting Or. Rev. Stat. § 475.005(15)).

As explained above, the generic offense definition of a drug trafficking crime includes felony manufacture of a controlled substance in violation of the Controlled Substances Act. The elements of that offense are (1) intentional or knowing (2) manufacture (3) of a controlled substance. *See Sandoval*, 866 F.3d at 990. Because marijuana is a federally controlled substance, 21 U.S.C. §§ 802(6), 812(c), manufacturing marijuana violates the Controlled Substances Act, *see* 21 U.S.C. § 841(a)(1), and is a felony offense, *see* 21 U.S.C. § 841(b)(1)(C). The Controlled Substances Act defines manufacture as, in relevant part, "the production, preparation, propagation, compounding, or processing of a drug or other substance." 21 U.S.C. § 802(15). "Production" is defined as "the manufacture, planting, cultivation, growing, or harvesting of a controlled substance." 21 U.S.C. § 802(22). Therefore, the elements of Dominguez's offense are the same as those of a manufacturing offense under the Controlled Substances Act, except for Oregon's inclusion of the word "conversion" in

---

**[6]** While incorporating the federal schedule, Oregon law further authorizes the State Board of Pharmacy to modify or add to Oregon's schedules of controlled substances. Or. Rev. Stat. § 475.035; *State v. Henry*, 840 P.2d 1335, 1336 (Or. App. 1992); *State v. Eells*, 696 P.2d 564, 567 (Or. App. 1985). Because Petitioner does not argue that the Oregon definition of "controlled substance" is distinct from the federal definition, this Court does not address that issue.

defining "manufacture." *Compare* 21 U.S.C. § 802(15), *with* Or. Rev. Stat. § 475.005(15).

Statutory definitions do not have to be identical to establish a categorical match. *See Moncrieffe v. Holder*, 569 U.S. 184, 205–06 (2013); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Rather, a petitioner bears the burden of showing that the state statute is overbroad, meaning that it criminalizes more conduct than the generic offense covers. *Moncrieffe*, 569 U.S. at 205–06. "[T]o find that a state statute creates a crime outside the generic definition . . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Duenas-Alvarez*, 549 U.S. at 193. The mere presence of an additional descriptive term in the state offense's definition is insufficient, on its own, to meet this burden. *See, e.g.*, *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1007–08 (9th Cir. 2015) ("[The petitioner] tries to make something of the fact that the federal statute says only 'possesses,' not 'possesses or controls' . . . . But there is no legally significant distinction between these terms."); *United States v. Reveles-Espinoza*, 522 F.3d 1044, 1047 (9th Cir. 2008) (per curiam) ("True, the Controlled Substances Act does not use the term 'drying,' but the ordinary meaning of the terms 'production' and 'processing of a drug' includes the act of drying.").

Here, the inclusion of the word "conversion" in Oregon's definition of manufacture does not criminalize any conduct beyond the reach of the Controlled Substances Act's definition. There is not a realistic probability that Oregon prosecutes conduct as conversion that is not covered by the Controlled Substances Act's descriptive terms, "production, preparation, propagation, compounding, or processing."

21 U.S.C. § 802(15); *see Reveles-Espinoza*, 522 F.3d at 1047–48. That is because conversion—changing one controlled substance to another—still amounts to "production," "compounding," and/or "processing" under federal law. Indeed, the government points to several cases charging conversion conduct as manufacturing under the Controlled Substances Act—such as the conversion of a liquid amphetamine to powdered form or the conversion of powdered cocaine into "crack" cocaine base. *See, e.g.*, *United States v. Eide*, 297 F.3d 701, 702, 705 (8th Cir. 2002) (precursor chemicals to methamphetamine); *United States v. Glinton*, 154 F.3d 1245, 1248, 1258 (11th Cir. 1998) (powder cocaine to cocaine base); *United States v. Beaulieu*, 900 F.2d 1531, 1534 (10th Cir. 1990) (liquid amphetamine to powder); *United States v. Villegas*, 899 F.2d 1324, 1339–40 (2d Cir. 1990) (cocaine base to cocaine hydrochloride). Therefore, although the Oregon and generic definitions of manufacture are not identical, there is no meaningful distinction between them because the Oregon definition is not broader than the generic.

Accordingly, the modified categorical approach establishes that Dominguez's Oregon conviction for manufacture of a controlled substance under § 475.992(1)(a) is a categorical match with the generic drug trafficking offense, meaning Dominguez was convicted of an aggravated felony. The BIA did not err in affirming the IJ's conclusion that Dominguez's offense constituted an aggravated felony, rendering Dominguez removable as charged and ineligible for asylum and cancellation of removal.

## B

In addition to being removable and ineligible for asylum, a noncitizen convicted of a particularly serious crime is

ineligible for withholding of removal under the INA and CAT. *Flores-Vega*, 932 F.3d at 884. For asylum purposes, an aggravated felony is *per se* a particularly serious crime. *Id.* (citing 8 U.S.C. § 1158(b)(2)(B)(i)). However, for withholding of removal claims, aggravated felonies are only *per se* particularly serious crimes when punished by a term of incarceration of at least five years. *Id.* (citing 8 U.S.C. § 1231(b)(3)(B)). When the petitioner is sentenced to fewer than five years in prison, as here, there is a discretionary inquiry into whether the crime of conviction was a particularly serious one. *See id.* We have jurisdiction only to determine whether the BIA correctly applied the proper legal standard. *Blandino-Medina v. Holder*, 712 F.3d 1338, 1342–43 (9th Cir. 2013).

The applicable legal standard for a particularly serious determination arises from *Matter of Frentescu*, 18 I. & N. Dec. 244 (B.I.A. 1982). *Flores-Vega*, 932 F.3d at 884. That BIA decision listed the so-called "*Frentescu* factors" to analyze whether a crime is particularly serious: "[the] nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community."[7] *Id.* (alteration in original) (quoting *Frentescu*, 18 I. & N. Dec. at 247). "In short, a crime is particularly serious if the nature of the conviction, the underlying facts

---

[7] In a subsequent regulation, the BIA clarified that "the final factor does not trigger an independent inquiry" because noncitizens found to have committed particularly serious crimes "shall be considered to constitute a danger to the community." *Flores-Vega*, 932 F.3d at 884 (quoting 8 C.F.R. § 1208.16(d)(2)); *see also Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) ("[T]here is no statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien.") (citation omitted).

and circumstances and the sentence imposed justify the presumption that the convicted immigrant is a danger to the community." *Delgado v. Holder*, 648 F.3d 1095, 1107 (9th Cir. 2011) (en banc).

The BIA properly applied that standard here. Both the BIA and the IJ cited *Frentescu* and stated that its factors controlled the analysis. Then, the BIA provided a reasoned explanation for affirming the IJ's conclusion, based on the factors, that Dominguez committed a particularly serious crime. The BIA considered several facts underlying Dominguez's conviction, including that "the respondent set up a marijuana growing operation inside one of the bedrooms in his home, which included special lights and approximately 50 potted plants." Further, the BIA noted the IJ's adverse credibility finding, highlighting inconsistencies in Dominguez's explanation "as to whether he was strictly growing the marijuana for his own personal use or for sale." The BIA also considered the nature of the conviction, noting that drug trafficking crimes in general have "devastating effects." Therefore, the BIA applied the proper legal standard by analyzing the *Frentescu* factors on an individualized basis. *See Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012) (per curiam).

The BIA did not—as Dominguez argues—rely on the elements of the crime of conviction alone in reaching its determination. Rather, the BIA considered specific facts about Dominguez's case in conjunction with the nature of the offense, thereby conducting a case-by-case analysis as required. *See Blandino-Medina*, 712 F.3d at 1347–48. The BIA did not err in affirming the IJ's conclusion that Dominguez committed a particularly serious crime.

## C

Lastly, a petitioner may be entitled to relief from a defective NTA if it is shown that the Immigration Court lacked jurisdiction. *Lazaro v. Mukasey*, 527 F.3d 977, 980 (9th Cir. 2008). Here, the initial NTA filed in Dominguez's case did not provide a specific date and time for the first hearing. A subsequent "Notice of Hearing," sent a week later, supplied that information.

Dominguez argues that the BIA erred in denying his motion to terminate proceedings because, under *Pereira*, the NTA was deficient and thus the IJ was never vested with jurisdiction.

In the time since Dominguez raised this argument, it has been squarely foreclosed by *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). The *Karingithi* court held that "*Pereira* was not in any way concerned with the Immigration Court's jurisdiction." *Id.* at 1159. Therefore, as in *Karingithi*, the IJ was vested with jurisdiction over Dominguez's case when the NTA was filed. *See id.* The BIA did not abuse its discretion in denying Dominguez's motion to terminate proceedings for lack of jurisdiction.

## CONCLUSION

Section 475.992(1)(a) is divisible between its manufacture and delivery terms. The BIA properly applied the modified categorical approach and correctly found that Dominguez was convicted of manufacture of a controlled substance, which constitutes an aggravated felony. Dominguez is thus removable as charged. Likewise, the BIA did not abuse its discretion in finding that Dominguez was convicted of a particularly serious crime, nor in denying Dominguez's motion to terminate proceedings. Therefore,

Dominguez is ineligible for asylum, withholding of removal, and CAT withholding.

We **DISMISS** in part and **DENY** in part the petition for review.