IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**JORGE ROMERO-MILLAN**,
*Petitioner*,

*v.*

**WILLIAM P. BARR, ATTORNEY GENERAL**,
*Respondent*,

**ERNESTO HERNANDEZ CABANILLAS**,
*Petitioner*,

*v.*

**WILLIAM P. BARR, ATTORNEY GENERAL**,
*Respondent,*

**MARCO ANTONIO GARCIA-PAZ**,
*Petitioner*,

*v.*

**WILLIAM P. BARR, ATTORNEY GENERAL,**
*Respondent.*

No. CV-20-0128-CQ
Filed April 19, 2022

United States District Court for the District of Arizona
Nos. BIA-1 : A077-138-666; BIA-1 : A095-285-170; BIA-1 : A034-063-749

Certified Questions from the
United States Court of Appeals for the Ninth Circuit
*Romero-Millan v. Barr*, 958 F.3d 844 (9th Cir. 2020)
**QUESTIONS ANSWERED IN PART**

_____

COUNSEL:

Gabriel G. Leyba (argued), Law Office of Gabriel G. Leyba, Phoenix, Attorney for Jorge Romero-Millan

Roberta Wilson, Law Office of Monika Sud-Devaraj & Associates, Phoenix, Attorney for Ernesto Hernandez Cabanillas

Matthew H. Green, Law Office of Matthew H. Green, Tucson, Attorney for Marco Antonio Garcia-Paz

Brian Boynton, Acting Assistant Attorney General, Civil Division, Jennifer J. Keeney, Assistant Director, Imran R. Zaidi (argued), Criminal Immigration Team Office of Immigration Litigation Civil Division, U.S. Department of Justice, Washington, D.C., Attorneys for William P. Barr

Mark Brnovich, Arizona Attorney General, Nicholas Klingerman (argued), Chief Counsel, Southern Arizona White Collar and Criminal Enterprise Section, Tucson, Jillian Francis, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Amicus Curiae Arizona Attorney General

Jon M. Sands, Federal Public Defender, Keith J. Hilzendeger (argued), Assistant Federal Public Defender, District of Arizona, Phoenix, Attorneys for Amici Curiae Arizona Attorneys for Criminal Justice and the Federal Public Defender for the District of Arizona

_____

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, and PELANDER (Retired) joined.[*]

---

JUSTICE BEENE, Opinion of the Court:

¶1        The United States Court of Appeals for the Ninth Circuit certified the following questions to this Court:

1. Is Arizona's possession of drug paraphernalia statute, A.R.S. § 13-3415, divisible as to drug type?
2. Is Arizona's drug possession statute, A.R.S. § 13-3408, divisible as to drug type?
3. Put another way, is jury unanimity (or concurrence) required as to which drug or drugs listed in A.R.S. § 13-3401(6), (19), (20), or (23) was involved in an offense under either statute?

¶2        Because the "divisibility" of a criminal statute pertains solely to federal law, and no Arizona court has addressed the issue, we improvidently accepted the first two questions and now decline to answer them.  As to the third question, we decline to answer it as it pertains to § 13-3415, but we answer the question in the affirmative as it relates to § 13-3408.[1]

## BACKGROUND

¶3        Jorge Romero-Millan, Ernesto Hernandez Cabanillas, and Marco Antonio Garcia-Paz[2] are all Mexican natives who were lawfully

---

[*]        Justice William G. Montgomery recused himself from this matter.  Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable John Pelander, Justice of the Arizona Supreme Court (Ret.), was designated to sit in this matter.

[1]        We apply the statutes in effect at the time the offense was committed for which the defendant is being sentenced. *State v. Newton*, 200 Ariz. 1, 2 ¶ 3 (2001).

[2]        Although Garcia-Paz died shortly before issuance of this Opinion, Cabanillas's case involves the same issues that we address below.

residing in the United States. Romero-Millan was convicted of possession or use of drug paraphernalia in violation of § 13-3415. Cabanillas and Garcia-Paz were convicted of possession of a narcotic drug for sale in violation of § 13-3408(A)(2). Based on their drug-related convictions, the immigration court ordered them to be removed from the country. The Board of Immigration Appeals affirmed.

¶4          In the subsequent appeals, the Ninth Circuit consolidated the cases and concluded that removability depended on whether Arizona's possession of drug paraphernalia statute (§ 13-3415) and Arizona's possession of narcotic drugs statute (§ 13-3408) are divisible as to drug type. Finding no controlling Arizona precedent addressing the issue, the Ninth Circuit certified the above-stated questions to this Court. *Romero-Millan v. Barr*, 958 F.3d 844, 849 (9th Cir. 2020).

¶5          We have jurisdiction under article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

### A.

¶6          Section 12-1861 authorizes this Court to answer questions of law certified to it by a federal court if the proceedings before the certifying court involve questions of Arizona law that lack controlling precedent in decisions from this Court or the court of appeals. Certified questions must be questions of state law. § 12-1861 ("The supreme court may answer questions of law . . . *of this state* which may be determinative of the cause then pending in the certifying court." (emphasis added)).

¶7          After examining the entire record and considering the briefs and oral arguments of the parties, we decline to answer the first two certified questions. These questions ask us to analyze the "divisibility" of two Arizona criminal statutes. Under federal law, whether a criminal statute is divisible requires the court to determine if the statute "sets out one or more elements of the offense in the alternative" as opposed to listing alternative methods or means of committing the crime. *Descamps v. United States*, 570 U.S. 254, 257 (2013). However, the divisibility analysis the Ninth Circuit asks us to perform is not conducted under Arizona law. Indeed, no Arizona court has ever discussed the divisibility of a criminal statute.

Neither of the first two certified questions raises questions under Arizona state law. Accordingly, we vacate the order accepting jurisdiction of those questions.

**B.**

**¶8** The remaining question asks whether jury unanimity regarding the identity of a specific drug is required when the state seeks a conviction under the drug paraphernalia and narcotic drug statutes. *See* §§ 13-3408, -3415. We address this question as it relates to these statutes in turn.

**¶9** Whether the fact-finder must identify a specific drug to obtain a conviction under § 13-3415 was discussed in *State v. Soza*, 249 Ariz. 13 (App. 2020). In that case, Soza was charged with, among other offenses, four counts of possession of drug paraphernalia: baggies for methamphetamine and heroin and scales for methamphetamine and heroin. *Id.* at 14 ¶ 4. The jury found Soza guilty as charged. *Id*.

**¶10** In deciding whether imposing multiple punishments for the same offense violates the Double Jeopardy Clause, the court of appeals determined that the "allowable unit of prosecution" for § 13-3415 was based on the "act of possessing" regardless of the number or kind or intended use of the paraphernalia possessed. *Id.* at 14 ¶ 6, 18 ¶ 23. The court concluded that Soza committed only one violation of § 13-3415 by simultaneously possessing the baggies and a scale because the drug paraphernalia statute "does not refer to *a specific type of drug crime*, and the title of the statute refers simply to '[p]ossession . . . of drug paraphernalia' without further distinction." *Id.* at 17 ¶ 19 (emphasis added). This determination was also supported by the fact that "[t]he language of A.R.S. § 13-3415 makes it conceivable . . . that a defendant could be found guilty of possessing drug paraphernalia without evidence linking the paraphernalia to a *specific drug offense*." *Id.* (emphasis added). The court of appeals ultimately concluded that committing an offense under § 13-3415(A) does not turn on a defendant's intent to commit a particular drug crime. *Id*.

**¶11** Although *Soza* could be interpreted as answering the certified question relating to § 13-3415, we demur in making this determination. We reach this conclusion because the issue decided in *Soza* was not appealed by the state and consequently not reviewed by this Court. Given this

5

procedural history, we are reticent to embrace the resolution reached in *Soza* because its holding may have unintended consequences that were not fully addressed by the parties. We prefer to resolve the issue of whether jury unanimity regarding the identity of a specific drug is required under § 13-3415 in the context of a case that directly raises the issue. Accordingly, the Ninth Circuit should discern whether jury unanimity regarding the identity of a specific drug is required under Arizona's possession of drug paraphernalia statute based on existing Arizona law. *See Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1131–32 (9th Cir. 2021) ("When the application of a federal statute depends on state law, 'federal authorities must apply what they find to be the state law.' Absent controlling precedent from the state supreme court, a federal court must 'predict how the highest state court would decide the [state law] issue using intermediate appellate court decisions . . . .'" (first quoting *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967); then quoting *Judd v. Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020))).

¶12　　　　Next, we consider whether jury unanimity regarding the identity of a specific drug is required for a conviction under Arizona's narcotic drug possession statute. Answering this question requires us to interpret § 13-3408.

¶13　　　　"Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018). Ambiguity arises when the language is reasonably susceptible to differing interpretations. *See Lewis v. Debord*, 238 Ariz. 28, 30–31 ¶ 8 (2015). When a statute is ambiguous, "we consult 'secondary interpretation methods, such as the statute's subject matter, historical background, effect and consequences, and spirit and purpose.'" *Redgrave v. Ducey*, 251 Ariz. 451, 457 ¶ 22 (2021) (quoting *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13 (2020)). "[R]elated statutes on the same subject" also inform our interpretation. *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).

¶14　　　　The relevant portion of § 13-3408 criminalizes possession or use of a narcotic drug, possession of a narcotic drug for sale, manufacture of a narcotic drug, or transportation of a narcotic drug for sale. § 13-3408(A). "Narcotic drugs" are defined in § 13-3401(20), which lists ninety-five substances that constitute a "narcotic drug" under Arizona's criminal code.

**¶15** We conclude § 13-3408 is ambiguous because it may be reasonably read to require that a jury unanimously determine that a specific drug be found to return a guilty verdict but could also reasonably be read to require only that a jury unanimously find that any one of the narcotic drugs listed in § 13-3401(20) is sufficient for a conviction. Because the language of § 13-3408(A) is reasonably susceptible to two differing interpretations and therefore ambiguous, we must turn to secondary methods of statutory construction to ascertain its meaning. *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101 ¶ 12 (2014). Employing those methods, we conclude that jury unanimity regarding the identity of a specific drug is required for a conviction under § 13-3408.

**¶16** The statute's context, structure, and effects support this conclusion. Notably, Arizona's drug-specific penalties illustrate that drug identity is an element of a narcotic drug offense. The sentencing scheme for § 13-3408 provides different punishments for different drugs depending on the particular threshold amount alleged by the state. Section 13-3408(D) requires that

> [i]f the aggregate amount of narcotic drugs involved in one offense or all of the offenses that are consolidated for trial equals or exceeds the statutory threshold amount, a person who is convicted of a violation of subsection A . . . is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis until the person has served the sentence imposed by the court . . . .

Concomitant with this statute, § 13-3401(36) defines "threshold amount," and lists eight subsections that assign a specific threshold amount to each particular substance. For example, the threshold amount for heroin is one gram; for cocaine, nine grams; for cocaine base, seven hundred fifty milligrams; and for phencyclidine (PCP), four grams. *See* § 13-3401(36)(a)–(d).

**¶17** Accordingly, if the state alleged a threshold amount for a narcotic set forth in § 13-3401(36), the jury would have to unanimously agree that the threshold amount had been proven for that particular narcotic. If the state fails to prove the alleged threshold amount, the

defendant would not be subject to § 13-3408(D)'s probation disqualifier. Because the threshold amount finding precludes probation as a sentencing option and increases the mandatory minimum punishment, it becomes an additional element the state must prove, and the jury must find it beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 102 (2013) ("[A]ny fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury."); A.R.S. § 13-3420.

**¶18**         This interpretation is supported by Arizona's long-standing precedent of allowing multiple convictions for contemporaneous violations of § 13-3408 involving multiple narcotic drugs. *See, e.g.*, *State v. Wright*, 239 Ariz. 284, 284 ¶ 1, 285 ¶ 6 (App. 2016) (affirming multiple convictions for possession of narcotic drugs for sale involving cocaine and heroin based on the same seizure); *State v. Siplivy*, 228 Ariz. 305, 306 ¶¶ 1–2 (App. 2011) (affirming convictions for two counts of possession of narcotic drugs where the defendant had both morphine and oxycodone); *State v. Tarango*, 182 Ariz. 246, 247–49 (App. 1994) (affirming convictions on two counts of possession of narcotic drugs for sale where the defendant possessed both heroin and cocaine); *State v. Padilla*, 176 Ariz. 81, 82, 85–86 (App. 1993) (affirming convictions for separate counts involving heroin and cocaine arising from the same purchase); *State v. Aikins*, 17 Ariz. App. 328, 330, 336 (1972) (affirming convictions for possession for sale of heroin and cocaine where both substances were found in the same seizure).

**¶19**         An examination of § 13-3408's legislative history also indicates that the legislature sought to criminalize the possession of a single narcotic drug. Previously, § 13-3408 criminalized the possession of "any" proscribed drug, *see* A.R.S. § 36-1002 (1978),[3] however, the legislature later modified the statute by prohibiting the possession of "a" drug instead of "any" drug, *see* A.R.S. § 13-3408 (1987). Although under Arizona law, "a" and "any" generally embrace both the singular and the plural, *see* A.R.S. § 1-214(B), the legislature's modification of the narcotic drug statute in this way demonstrates an intent to change the statute to encompass the singular form of that noun. Additionally, several other statutes similarly reference the "possession or use of *a* narcotic drug in violation of § 13-3408." A.R.S. § 13-3422(I)(4) (emphasis added); *e.g.*, A.R.S. §§ 31-281; 41-1604.07, -1604.16.

---

[3]         In 1978, § 13-3408 was numbered as § 36-1002.

¶20        Finally, analyzing this question under our "unit of prosecution" jurisprudence leads to the same result. *See State v. Jurden*, 239 Ariz. 526, 529 ¶ 11 (2016). The Double Jeopardy Clause of the United States and Arizona Constitutions "protects against multiple punishments for the same offense." *Id.* ¶ 10. "[I]f multiple violations of the same statute are based on the same conduct, there can be only one conviction if there is a single offense." *Id.* ¶ 11. In such an instance, "the statutory definition of the crime determines the scope of conduct for which a discrete charge can be brought," which has been referred to as the "allowable unit of prosecution." *Id.* (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)).

¶21        Relying on the interpretive principles previously mentioned, *supra* ¶¶ 15–19, we read the unit of prosecution under § 13-3408 to be "drug-based" because the statute's focus is to criminalize the different methods of possessing *a* narcotic drug. *See* § 13-3408(A). Unlike the result reached in *Soza*, where the court concluded that "the act of possessing drug paraphernalia best reflects the unit of prosecution" and found that although Soza possessed multiple items of drug paraphernalia he "committed only one violation of A.R.S. § 13-3415(A)," *Soza*, 249 Ariz. at 18 ¶ 23, here, each of the ninety-five substances listed in § 13-3401(20) are designated as a narcotic drug independently, and possessing any one of these narcotic drugs constitutes a separate and independent criminal offense. Because the primary focus of the statute is to prevent the possession of narcotic drugs, there may be multiple convictions under § 13-3408 for a single event that involves different narcotic drugs.

## CONCLUSION

¶22        Because the divisibility of a criminal statute is not a question of Arizona law, we decline to answer the first two certified questions. The third question, however, deals with Arizona law. Although we decline to answer that question in relation to § 13-3415, we conclude that the identity of an alleged narcotic drug is an element of § 13-3408, and therefore jury unanimity is required.