**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr><td>

JORGE ROMERO-MILLAN,
          *Petitioner*,

v.

MERRICK B. GARLAND,* Attorney General,
          *Respondent.*

</td><td>

No. 16-73915

Agency No.
A077-138-666

</td></tr>
</table>

<table>
<tr><td>

ERNESTO HERNANDEZ CABANILLAS,
          *Petitioner*,

v.

MERRICK B. GARLAND,* Attorney General,
          *Respondent.*

</td><td>

No. 17-72893

Agency No.
A095-285-170

OPINION

</td></tr>
</table>

On Petition for Review of Orders of the
Board of Immigration Appeals

---

   * Merrick B. Garland is substituted for his predecessor, William P. Barr, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

Argued and Submitted March 6, 2020
Submission Withdrawn May 4, 2020
Resubmitted August 22, 2022
Phoenix, Arizona

Filed August 29, 2022

Before:  Richard R. Clifton, John B. Owens, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[**]

### Immigration

Denying separate petitions for review filed by Jorge Romero-Millan and Ernesto Hernandez Cabanillas from decisions of the Board of Immigration Appeals, the panel held that: 1) Arizona's drug possession statute, A.R.S. § 13-3408, and Arizona's possession of drug paraphernalia statute, A.R.S. § 13-3415, are divisible as to drug type; and 2) the BIA did not err in concluding that petitioners were convicted of controlled substance offenses that supported their orders of removal.

The BIA concluded that Romero-Millan was inadmissible and ineligible for adjustment of status based on his § 13-3415 conviction.  Hernandez Cabanillas, who was a

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

lawful permanent resident, was found removable based on his § 13-3408 conviction. For both petitioners, the agency applied the modified categorical approach to determine that their Arizona convictions were convictions for controlled substances under federal law. However, because Arizona's list of prohibited drugs is overbroad with respect to federal law, the panel previously certified three questions to the Supreme Court of Arizona: 1) Is A.R.S. § 13-3415 divisible as to drug type?; 2) Is A.R.S. § 13-3408 divisible as to drug type?; and 3) Put another way, is jury unanimity required as to which drug or drugs was involved in an offense under either § 13-3415 or § 13-3408?

The Supreme Court of Arizona ruled that it had improvidently accepted the first two questions because divisibility pertains solely to federal law, and no Arizona court had addressed the issue. On the third question, the Supreme Court of Arizona concluded that jury unanimity as to the identity of the drug involved was required for a conviction under § 13-3408. However, the court declined to answer that question as to § 13-3415, explaining that a prior state court of appeal decision containing a relevant discussion had not been appealed to it, and therefore, it was reticent to take a position given the possibility of unintended consequences that were not fully addressed by the parties in that case.

Although petitioners' removal orders were based on convictions that could trigger the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(C), the panel explained that divisibility is purely a legal question, and therefore, is reviewable under § 1252(a)(2)(D), which exempts "constitutional claims or questions of law" from the jurisdiction-stripping provision. Moreover, the panel explained that the application of the modified categorical

approach involves the application of a legal standard to "established facts," which the Supreme Court in *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020), held was a reviewable question of law.

Based on the Supreme Court of Arizona's holding that jury unanimity as to the identity of a specific drug is required for a conviction for drug possession under § 13-3408, the panel held that § 13-3408 is divisible as to drug type. Accordingly, the panel concluded that the agency did not err in by applying the modified categorical approach to examine Hernandez Cabanillas's record of conviction. Assessing the charging documents, plea colloquy, and plea agreement, the panel also concluded that the BIA did not err in determining that the drug underlying Hernandez Cabanillas's conviction was cocaine, a federally controlled substance.

The panel also held that possession of drug paraphernalia under § 13-3415 is divisible as to drug type. Noting that the Supreme Court of Arizona declined to answer the question of jury unanimity with respect to this statute, the panel concluded that the balance of the statutory text, Arizona case law, sentencing guidelines, jury instructions, and a peek at Romero-Millan's record of conviction favored the conclusion that § 13-341 is divisible as to drug type. Accordingly, the panel concluded that the BIA did not err in by applying the modified categorical approach to Romero-Millan's record of conviction. Looking to the information to which Romero-Millan pled guilty, the panel concluded that the BIA properly found that his conviction involved cocaine.

**COUNSEL**

Gabriel G. Leyba (argued), Crossroads Law Group LLP, Phoenix, Arizona, for Petitioner Jorge Romero-Millan.

Roberta Wilson (argued), Phoenix, Arizona, for Petitioner Ernesto Hernandez Cabanillas.

Imran Raza Zaidi (argued) and David J. Schor (argued), Trial Attorneys; Nehal H. Kamani, Attorney; Emily Anne Radford, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

CLIFTON, Circuit Judge:

Petitioners Jorge Romero-Millan and Ernesto Hernandez Cabanillas are natives and citizens of Mexico who were ordered removed from this country. They petitioned separately for review of their final orders of removal. Those orders were based on determinations by immigration judges (IJ) affirmed by the Board of Immigration Appeals (BIA) that Petitioners' convictions under Arizona state law were convictions for controlled substance offenses as that term is used under federal law. We certified three state-law questions to the Supreme Court of Arizona, which accepted certification and issued a written opinion addressing each question. The petitions are now back before us, and we deny both petitions for review.

Underlying these cases is the fact that the list of "controlled substances" under Arizona law differs slightly

from the list under federal law. As we stated in our order certifying questions to the Supreme Court of Arizona, and as we will explain at greater length below, at 15–16, "[t]here is no categorical match between the federal crime and the Arizona crimes because of a minor but critical difference in the types of drugs each statute prohibits." *Romero-Millan v. Barr*, 958 F.3d 844, 848 n.1 (9th Cir. 2020). Specifically, "[t]he Arizona statute lists benzylfentanyl and thenylfentanyl as prohibited narcotic drugs, A.R.S. § 13-3401(20)(n) & (mmmm), while the federal statute does not." *Id.* (citing 21 U.S.C. § 812 and 21 C.F.R. §§ 1308.11–15). Therefore, these cases turn on "whether A.R.S. § 13-3415 and § 13-3408 are divisible as to drug type." *Id.* at 848.

As noted, we certified three questions to the Supreme Court of Arizona:

> 1. Is Arizona's possession of drug paraphernalia statute, A.R.S. § 13-3415, divisible as to drug type?
>
> 2. Is Arizona's drug possession statute, A.R.S. § 13-3408, divisible as to drug type?
>
> 3. Put another way, is jury unanimity (or concurrence) required as to which drug or drugs listed in A.R.S. § 13-3401(6), (19), (20), or (23) was involved in an offense under either statute?

*Id.* at 849; *see also* Ariz. Sup. Ct. R. 27.

The Supreme Court of Arizona exercised its discretionary authority to accept certification. *See* Ariz. Const. art. VI, § 5; A.R.S. § 12-1861; *Romero-Millan v.*

*Barr*, 253 Ariz. 24, 507 P.3d 999, 1001 (2022). That court issued an opinion on April 19, 2022, responding to the certified questions, *Romero-Millan*, 507 P.3d at 1001, and on June 27, 2022, issued its formal mandate to this court, making the opinion final.

As to the first and second questions—whether Arizona's possession of drug paraphernalia statute (§ 13-3415) and drug possession statute (§ 13-3408) are divisible as to drug type, respectively—the Supreme Court of Arizona ruled: "Because the 'divisibility' of a criminal statute pertains solely to federal law, and no Arizona court has addressed the issue, we improvidently accepted [those] questions and now decline to answer them."[1] *Id.* at 1001. The court concluded as follows:

> Under federal law, whether a criminal statute is divisible requires the court to determine if the statute "sets out one or more elements of the offense in the alternative" as opposed to listing alternative methods or means of committing the crime. However, the divisibility analysis the Ninth Circuit asks us to perform is not conducted under Arizona

[1] We acknowledged in our certification order that the divisibility "inquiry in the context of immigration cases like these is mostly a federal concern, as it is a product of federal law and impacts cases in federal court." *Romero-Millan*, 958 F.3d at 850. "Nonetheless, we recognize[d] that Arizona has an interest in this question because of the potential impact on state cases" because "if A.R.S. § 13-3408 is divisible as to drug type, and thus is a predicate offense for immigration removal purposes, this requires the state to prove, in every case, what drug type a defendant possessed . . . ." *Id.* The third question is the important one under Arizona law, and the first two questions were included to put the issue in full context. We understand the decision of the Arizona court to decline to respond to the first two questions.

law. Indeed, no Arizona court has ever discussed the divisibility of a criminal statute. Neither of the first two certified questions raises questions under Arizona state law. Accordingly, we vacate the order accepting jurisdiction of those questions.

*Id.* at 1001–02 (citation omitted); *see also* A.R.S. § 12-1861 ("The supreme court may answer questions of law . . . of this state which may be determinative of the cause then pending in the certifying court.").

As to the third question, whether a jury is required to reach unanimous agreement on the identity of the drug involved in the crime, the Supreme Court of Arizona answered in the affirmative as it relates to § 13-3408, the drug possession criminal statute. *Romero-Millan*, 507 P.3d at 1001. The court ruled that, with respect to § 13-3408, "jury unanimity regarding the identity of a specific drug is required for a conviction." *Id.* at 1003. The Arizona court declined to answer the question as to § 13-3415, the possession of drug paraphernalia statute, for reasons we will note below, at 19.

After the Arizona court issued its decision responding to our certified questions, we consolidated these two cases.[2] We deny both petitions for review.

---

[2] Our certification order also concerned a third case involving another citizen of Mexico, Marco Antonio Garcia-Paz, who had been ordered removed from the United States. He had been convicted under the same statute as Hernandez Cabanillas and presented a similar challenge to his removal. *See Romero-Millan*, 958 F.3d at 847. Garcia-Paz passed away in 2021, and his petition was thereafter dismissed by

## I.  Background

### A.  Jorge Romero-Millan

Jorge Romero-Millan says that he entered the United States in 1984. He did not have authority to do so and did not have lawful status in this country. In 2014, Romero-Millan pled guilty to "Count 3 of the Information: POSSESSION OR USE OF DRUG PARAPHERNALIA." Count 3 states, "JORGE MILLAN ROMERO [] used or possessed with intent to use, cocaine drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body an illegal drug, in violation of A.R.S. § 13-3415." Based on this plea agreement, he was convicted of possessing or using drug paraphernalia in violation of § 13-3415.

While he was serving his sentence, the federal government, through the Department of Homeland Security, initiated removal proceedings against him and served him with a Notice to Appear. The government alleged that he qualified as an alien present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i), and as an alien convicted of a controlled substance offense under § 1182(a)(2)(A)(i)(II). At the original removal hearing, he conceded both charges of removal. After the Supreme Court issued *Mellouli v. Lynch*, 575 U.S. 798 (2015), however, he

---

this court. The Arizona court noted his passing in its opinion. *Romero-Millan*, 507 P.3d at 1001 n.2 (2022).

withdrew his concession on the second charge of removability.[3]

The IJ issued a decision finding Romero-Millan ineligible for any relief and ordering his removal to Mexico. The government's second charge—for removability as an alien convicted of a controlled substance offense—served as the basis for finding Romero-Millan statutorily ineligible for adjustment of status, a form of relief he had requested. Because the Arizona list of controlled substances includes substances not on the comparable federal list, as noted above, at 5–6, the IJ determined that Romero-Millan's conviction under § 13-3415 did not categorically qualify as a conviction for a controlled substance offense under federal immigration law. The IJ also concluded, however, that § 13-3415 is divisible, a concept we discuss below, at15–17. Using the modified categorical approach, also discussed

---

[3] In *Mellouli*, the Supreme Court held that in order to demonstrate that an offense is related to a controlled substance and therefore triggers removability, "the Government must connect an element of the alien's conviction to a drug 'defined in [21 U.S.C. § 802].'" 575 U.S. at 813 (quoting 8 U.S.C. § 1227(a)(2)(B)(i) (authorizing the removal of an alien "convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21)")). Specifically, the Court reversed the judgment of the Eighth Circuit denying Mellouli's petition for review concerning his removal based on his conviction under Kansas's drug paraphernalia statute, which references a list of controlled substances that is broader than the list of federally-controlled substances under § 802. *Id.* at 802–04. The Court interpreted the text of § 1227(a)(2)(B)(i) as limiting the meaning of "controlled substances" for removability purposes to those listed under § 802. *Id.* at 813. The Court reasoned that there was no basis for distinguishing drug paraphernalia offenses from drug possession and distribution offenses because all of those drug offenses only trigger removability if there is a direct link between an element of the offense of conviction and a specific, federally-controlled substance. *Id.*

below, at 17–18, the IJ found that Romero-Millan was convicted of a controlled substance offense. The BIA adopted and affirmed this decision and dismissed his appeal. Romero-Millan timely filed a petition for review.[4]

## B. Ernesto Hernandez Cabanillas

Ernesto Hernandez Cabanillas, a native and citizen of Mexico, has been a lawful permanent resident of the United States since 2004. In 2016, he pled guilty to possessing a narcotic drug for sale in violation of A.R.S. § 13-3408(A)(2).[5] The government charged him as removable as an alien convicted of a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i).

The IJ sustained the government's charge of removability. The IJ found that Hernandez Cabanillas's conviction related to a federally controlled substance because § 13-3408, while overbroad, was divisible as to drug type. The IJ concluded by applying the modified categorical approach that he was removable and entered an order of removal. Hernandez Cabanillas appealed to the BIA, which

---

[4] Romero-Millan's appeal does not challenge the BIA's affirmance of the IJ's conclusion finding him "ineligible for a waiver of inadmissibility under [8 U.S.C. § 1182(h)] because the drug underlying his controlled substance-related conviction was cocaine[,]" so we decline to address that issue. *See* 8 U.S.C. § 1182(h)(1)(A) (stating that a waiver for the ground of inadmissibility due to a conviction of a controlled substance offense exists if the conviction "relates to a single offense of simple possession of 30 grams or less of marijuana").

[5] The other sections of the Arizona criminal code under which Hernandez Cabanillas was charged are not separate offenses. Section 13-3401 is the "Definitions" section of Arizona's drug offenses chapter; § 3418 describes how drug convictions render persons ineligible for public benefits; and §§ 701, 702, and 801 relate to sentencing.

dismissed his appeal in a decision by a three-member panel, with one member dissenting on the ground that the government had failed to meet its burden to establish that § 13-3408 was divisible as to drug type. Hernandez Cabanillas timely filed a petition for review.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252. Section 1252(a) generally provides for judicial review of final orders of removal. However, both Romero-Millan's and Hernandez Cabanillas's final orders of removal were based on convictions for offenses that *could* trigger a jurisdiction-stripping provision, § 1252(a)(2)(C), which states: "[E]xcept as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title . . . ." Romero-Millan was ordered to be removed after being found ineligible for adjustment of status and inadmissible as an alien convicted of a controlled substance offense under § 1182(a)(2)(A)(i)(II). Hernandez Cabanillas was ordered to be removed after being charged as removable as an alien convicted of a controlled substance offense under § 1227(a)(2)(B)(i).

Notwithstanding § 1252(a)(2)(C), the BIA's divisibility analyses in both of these cases are reviewable under § 1252(a)(2)(D), which exempts "constitutional claims or questions of law" from that jurisdiction-stripping provision, because divisibility is a purely legal issue. Moreover, the BIA's application of the modified categorical approach in both of these cases involves the application of a legal standard to "established facts," which the Supreme Court in *Guerrero-Lasprilla v. Barr* held was a reviewable question

of law for the purposes of applying § 1252(a)(2)(D)'s exemption to the jurisdiction-stripping provision. 140 S. Ct. 1062, 1067 (2020). *Guerrero-Lasprilla* held that "the phrase 'questions of law' in [§ 1252(a)(2)(D)] includes the application of a legal standard to undisputed or established facts" in addition to purely legal questions. *Id.* Therefore, as we recently concluded in a case involving divisibility and the modified categorical approach, we have jurisdiction over these cases under § 1252. *See Lazo v. Wilkinson*, 989 F.3d 705, 714 (9th Cir. 2021) (exercising jurisdiction under § 1252 to deny a petition for review upon holding that a California statute regarding possession of a controlled substance is divisible as to controlled substance and that petitioner's conviction documents unambiguously established his conviction was a violation of law "relating to a controlled substance" for removal purposes under 8 U.S.C. § 1227(a)(2)(B)(i)).

We review de novo the BIA's conclusions that non-citizens are "removable and ineligible for discretionary relief." *Valdez v. Garland*, 28 F.4th 72, 76 (9th Cir. 2022); *see also Lopez-Marroquin v. Garland*, 9 F.4th 1067, 1070 (9th Cir. 2021) ("Divisibility, like element identification, is reviewed de novo."). While the BIA's interpretation of federal immigration statutes is often entitled to deference, *see Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1184 (9th Cir. 2011), no deference is owed to the BIA's interpretation of statutes that it does not administer, including Arizona's criminal statutes, *see Medina-Lara v. Holder*, 771 F.3d 1106, 1117 (9th Cir. 2014).

## III.   Discussion

The key issue in Romero-Millan's case is whether his drug paraphernalia conviction under A.R.S. § 13-3415 is a conviction for a controlled substance offense that renders

him categorically ineligible for adjustment of status and inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) as an "alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21)."

The key issue in Hernandez Cabanillas's case is whether his drug possession conviction under A.R.S. § 13-34081 is a conviction for a controlled substance offense that makes him removable under 8 U.S.C. § 1227(a)(2)(B)(i), which renders removable "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21)."

In both cases, the government must show that Petitioners' Arizona state law convictions are related to a controlled substance under federal law. *See Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1024 (9th Cir. 2008) (recognizing that the government bears the initial burden of establishing removability by clear and convincing evidence). In *Mellouli v. Lynch*, the Supreme Court clarified that to establish that an offense is related to a controlled substance, "the Government must connect an *element* of the alien's conviction to a drug 'defined in [§ 802].'" 575 U.S. at 813 (emphasis added). We determine whether convictions are for controlled substance offenses by applying the three-step process established by the Supreme Court in *Descamps v. United States*, 570 U.S. 254 (2013), and *Taylor v. United States*, 495 U.S. 575 (1990).

## A. The Three-Step Process

At Step One, "we employ 'the categorical approach, [in which] we examine only the statutory definition of the crime to determine whether the state statute of conviction renders an alien removable under the statute of removal, without looking to the actual conduct underlying the petitioner's offense.'" *Villavicencio v. Sessions*, 904 F.3d 658, 664 (9th Cir. 2018) (alteration in original) (quoting *Ragasa v. Holder*, 752 F.3d 1173, 1176 (9th Cir. 2014)). Rather than looking to the underlying conduct, the categorical approach requires us to look to the *elements* of the two offenses. *Id.* Elements are "the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction," "what the jury must find beyond a reasonable doubt to convict," and "what the defendant necessarily admits when he pleads guilty." *Mathis v. United States*, 579 U.S. 500, 504 (2016) (internal quotation marks and citations omitted).

"[I]f the categorical approach reveals that the elements of the state . . . crime are broader than the elements of the federal offense, then the state crime is not a categorical match." *Villavicencio*, 904 F.3d at 664 (emphasis removed); *see also Descamps*, 570 U.S. at 261 ("The key, we emphasized, is elements, not facts."). On the other hand, "[w]hen the elements of the state offense are the same as, or narrower than, those of the [federal] offense, the petitioner's conviction is a categorical match" and thus imposes immigration-related consequences. *Lopez-Marroquin*, 9 F.4th at 1070.

In these cases, as we concluded in our certification order and detailed above, at 5–6, there is not a categorical match between the federal crime and the Arizona crimes because the Arizona statute lists two substances, benzylfentanyl and thenylfentanyl, as prohibited narcotic drugs that are not

included on the federal list. Because a conviction under either of the Arizona state statutes could be based on a substance that is not a controlled substance under federal law, there is no categorical match for immigration law purposes between the federal statute and either § 13-3408 or § 13-3415 at Step One.

If the statute is not a categorical match, the inquiry proceeds to Step Two, at which point the court determines whether the offense is "divisible"—meaning whether the state law "sets out one or more *elements* of the offense in the alternative" as opposed to listing alternative *means* of committing the crime. *Descamps*, 570 U.S. at 257 (emphasis added). We determine whether a given crime under state law involves alternative *elements* or alternative *means* by "look[ing] first to the statute itself and then to the case law interpreting it." *Sandoval v. Sessions*, 866 F.3d 986, 993 (9th Cir. 2017); *see also Mathis*, 579 U.S. at 517–18 (stating that courts must look to authoritative sources of state law such as state court decisions and the wording of the state statute in question when analyzing the statute's divisibility).

To be clear, the presence of a disjunctive list in a statute is not dispositive of the statute's divisibility. We have interpreted the Supreme Court's ruling in *Mathis* as "instruct[ing] courts not to assume that a statute lists alternative elements and defines multiple crimes simply because it contains a disjunctive list." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1039 (9th Cir. 2017) (en banc).

A state statute contains alternative *elements* and not merely alternative *means* if a jury has to "*unanimously* agree that [the defendant] committed a particular substantive offense contained within the disjunctively worded statute." *Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014)

(emphasis added). "If 'state law fails to provide clear answers,' courts may take a 'peek' at the record of conviction for the 'sole and limited purpose of determining whether the listed items are elements of the offense'"; however, "[i]f such records do not 'plainly' demonstrate that the alternatives are elements rather than means, the statute is indivisible." *Lopez-Marroquin*, 9 F.4th at 1071 (quoting *Mathis*, 579 U.S. at 518–19).

In these cases, there is "no categorical match" at Step One between the federal statute and the Arizona statutes given the "difference in the types of drugs each statute prohibits," so these cases turn on Step Two: "whether A.R.S. § 13-3415 and § 13-3408 are divisible as to drug type." *Romero-Millan*, 958 F.3d at 848 & n.1. The key legal question is "whether a jury must agree, as a matter of law, on what drug the defendant possessed." *Id.* at 848.

If the statute is not divisible, our analysis stops and the state law conviction cannot be held to be related to a controlled substance under federal law. *See Medina-Lara*, 771 F.3d at 1112 ("[A] conviction under an indivisible, overbroad statute can *never* serve as a predicate offense.").

If the statute is divisible, at Step Three, we apply the modified categorical approach, discussed below, at 18 and 26–27, which involves "consult[ing] a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 257. The documents we may inspect "include 'the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information.'" *United States v. Marcia-Acosta*, 780 F.3d 1244, 1250 (9th Cir. 2015) (alteration in original) (quoting *Shepard v. United*

*States*, 544 U.S. 13, 26 (2005)). After consulting these documents and "[h]aving identified the underlying offense of conviction, we may then determine whether those elements are a match to the generic federal offense." *Dominguez v. Barr*, 975 F.3d 725, 735 (9th Cir. 2020) (citing *Rendon*, 764 F.3d at 1083); *Mathis*, 579 U.S. at 513 ("[T]he modified [categorical] approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque."). In these cases, the question is whether the documents establish that the convictions were based on substances that are on the federal list. If, by applying the modified categorical approach, it is determined that the state law conviction is related to a controlled substance under federal law, the alien is removable.

## B. Section 13-3408, Possession of a Drug for Sale

The Supreme Court of Arizona, in answering the third certified question, held that jury unanimity regarding the identity of a specific drug is required for a conviction under § 13-3408 for possession of a drug for sale. *Romero-Millan*, 507 P.3d at 1001–04. The court found particularly instructive the fact that "Arizona's drug-specific penalties illustrate that drug identity is an element of a narcotic drug offense" because "[t]he sentencing scheme for § 13-3408 provides different punishments for different drugs depending on the particular threshold amount alleged by the state." *Id.* at 1003.

Based on the Supreme Court of Arizona's answer, we hold that § 13-3408 is divisible as to drug type. The IJ did not err by applying the modified categorical approach to examine the underlying record of conviction. The charging documents, the plea colloquy, and the plea agreement establish that the substance upon which the conviction of

Hernandez Cabanillas was based was cocaine, a substance on the federal list. The BIA did not err in concluding that the drug type underlying his conviction was cocaine.[6]

### C. Section 13-3415, Use of or Possession with Intent to Use Drug Paraphernalia

The Supreme Court of Arizona declined to answer the portion of the third certified question that pertained to Arizona's drug paraphernalia statute, § 13-3415. *Romero-Millan*, 507 P.3d at 1002. It noted that a prior state court of appeal decision that contained a relevant discussion had not been appealed to or reviewed by it. *Id.* (citing *State v. Soza*, 249 Ariz. 13, 464 P.3d 696 (Ct. App. 2020)). The court was "reticent" to take a position on the issue given the possibility of "unintended consequences that were not fully addressed by the parties" in that case and would "prefer to resolve the issue . . . in the context of a case that directly raises the issue." *Id.* We appreciate that concern, which also illustrates the reason for our certification, as it recognizes the potential impact of answers to the certified questions on an important question of Arizona state law.

As we noted as a possibility in our certification order, and as the Supreme Court of Arizona requested after declining to answer the third certified question as it pertains to § 13-3415, "we will resolve these questions following our best understanding of Arizona law." *Romero-Millan*,

---

[6] We reject the argument made in Hernandez Cabanillas's reply brief that the decision of the Supreme Court in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), divests us of jurisdiction over this case. *Pereira*'s holding is limited to the narrow context of the stop-time rule, which is not at issue in this case. *See id.* at 2110; *see also United States v. Bastide-Hernandez*, 39 F.4th 1187, 1193 (9th Cir. 2022) (en banc); *Aguilar Fermin v. Barr*, 958 F.3d 887, 895 (9th Cir. 2020).

958 F.3d at 850; *see also Romero-Millan*, 507 P.3d at 1002 ("[T]he Ninth Circuit should discern whether jury unanimity regarding the identity of a specific drug is required under Arizona's possession of drug paraphernalia statute based on existing Arizona law." (citing *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1131–32 (9th Cir. 2021))).

We conclude that the balance of the statutory text, Arizona case law, and the record of conviction favors the government's argument and, therefore, we hold that § 13-3415 is divisible as to drug type.[7]

We start with the text of the statute. Section 13-3415(A) states:

> [I]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a drug in violation of this chapter. Any person who violates this subsection is guilty of a class 6 felony.

Section 13-3415(F) defines a drug as "any narcotic drug, dangerous drug, marijuana, or peyote." The terms "narcotic drug" and "dangerous drug" are defined through lists of substances determined by the Arizona state legislature to be

---

[7] To be clear, this remains a question of state law as to which the Supreme Court of Arizona remains the ultimate authority. Should it later decide the underlying question differently, such as by deciding that jury unanimity as to drug type was not required for a conviction under § 13-3415, it is that court's decision that must be followed.

drugs. A.R.S. § 13-3401(6), (20). On its face, the language of § 13-3415 does not specify whether the type of drug underlying the conviction is an element of the offense.

Similarly, Arizona case law does not establish whether a jury must agree on which drug was involved in a violation of § 13-3415 or may simply agree that "a drug" on the state-law list of drugs was involved. Decisions of the state court of appeals arguably point in different directions. *State v. Lodge*, No. 2 CA-CR 2014-0110, 2015 WL 164070, at *6 (Ariz. Ct. App. Jan. 14, 2015), upheld a conviction under § 13-3415 without the paraphernalia in question being connected to a specific drug, holding that a jury need not conclude which drug was involved and that "[a]ll that is required is that the state establish some use in violation of § 13-3415(A)." In *Lodge*, the defendant was charged with one count of possession of drug paraphernalia, which included paraphernalia for both marijuana and methamphetamine. *Id.* The *Lodge* court found persuasive the defendant's argument that, "taken as a whole, [the indictment] raises the possibility that some jurors could determine that one item of paraphernalia was used to violate one provision of chapter 34 and other jurors that it could find the same item was used to violate another." *Id*. (alteration in original).

On the other hand, in *State v. Martinez*, No. 2 CA-CR 2016-0039, 2017 WL 4403141, at *1 (Ariz. Ct. App. Oct. 3, 2017), the court upheld a conviction for two counts of possession of drug paraphernalia under § 13-3415 based on the defendant's possession of a single scale with remnants of two drugs (methamphetamine and heroin) found on it. The fact that *Martinez* allowed one scale to result in two counts of possession of drug paraphernalia suggests that the

paraphernalia must be attached to a specific drug, which is thus an element of the offense under § 13-3415.

The statute's use of the phrase "a drug" as opposed to "any drug" supports, but does not require coming to, the conclusion that drug type is an element of § 13-3415. *State v. Gutierrez*, 240 Ariz. 460, 466–67, 381 P.3d 254, 260–61 (Ct. App. 2016), ascribed meaning to this phrasing, albeit in the context of a different statute that criminalized "[u]sing or possessing a deadly weapon during the commission of [some] felony offense[s]." *Id.* at 259 (quoting A.R.S. § 13-3102(A)(8)). In *Gutierrez*, the court interpreted the fact that the statute "is written in the explicit singular, using the phrase '*a* deadly weapon' (not '*any* deadly weapon')" as supporting the conclusion that the Arizona state legislature intended to authorize prosecution for multiple offenses for *each* deadly weapon used or possessed in commission of a qualifying felony offense. *Id.* at 260. Our court has relied on similar reasoning to hold that the language of 21 U.S.C. § 841 (criminalizing, *inter alia*, the "manufactur[ing], distribut[ing[, or dispens[ing], or possess[ing] with intent to manufacture, distribute, or dispense, a controlled substance") showed that Congress "intended to treat different controlled substances as separate offenses" because § 841(a)(1) "criminalizes the possession of '*a* controlled substance,' not possession of 'a controlled substance or group of controlled substances.'" *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003) (emphasis added) (citation omitted).

We also consider as persuasive authority Arizona's sentencing guidelines and pattern jury instructions. The Arizona sentencing guidelines provide that "any person who is convicted of the personal possession or use of a controlled substance or drug paraphernalia is eligible for probation,"

A.R.S. § 13-901.01(A), but establish an exception for those who were "convicted of the personal possession or use of a controlled substance or drug paraphernalia and the offense involved methamphetamine," *id.* § 13-901.01(H)(4). These sentencing guidelines indicate that the substance underlying the conviction matters because it can result in a defendant being rendered categorically ineligible for probation. The U.S. Supreme Court has previously stated that "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Mathis*, 579 U.S. at 518. In *Lopez-Marroquin v. Garland*, we recognized that the argument that statutory alternatives are *elements* rather than *means* is strengthened if those alternatives result in enhanced penalties. *See* 9 F.4th at 1072 (noting as supporting evidence for determining that the specific vehicle type is an element of a crime that "the penalties are enhanced for theft of certain vehicles (an ambulance, a marked law enforcement vehicle, or a vehicle modified for the use of disabled persons)" (citing Cal. Veh. Code § 10851(b))); *see also Dominguez*, 975 F.3d at 736–37 (citing as support for considering statutory alternatives—"delivery" and "manufacture" of a controlled substance—to be elements, rather than means, the fact that state courts recognized that, "under some circumstances, the [state] legislature has chosen to punish delivery of a controlled substance less than it has chosen to punish manufacture" (quoting *State v. Tellez*, 14 P.3d 78, 80–81 (Or. Ct. App. 2000))).

Arizona's sentencing guidelines establish that violations of the same statute that involve different types of drugs (i.e., methamphetamine as opposed to other drugs) may result in different punishments. These guidelines support the argument that drug type is an element of the offense under § 13-3415. The Supreme Court of Arizona applied a similar approach in its response to our certification order regarding

a conviction under the drug possession statute, § 13-3408. The court concluded that "Arizona's drug-specific penalties illustrate that drug identity is an element of a narcotic drug offense" because "[t]he sentencing scheme for § 13-3408 provides different punishments for different drugs depending on the particular threshold amount alleged by the state." *Romero-Millan*, 507 P.3d at 1003. Arizona's sentencing guidelines illustrate the same difference for violations of § 13-3415 related to methamphetamine versus other drugs.

We also consider jury instructions as persuasive authority when analyzing divisibility. *See Lopez-Marroquin*, 9 F.4th at 1073; *see also Martinez-Lopez*, 864 F.3d at 1041 (finding model jury instructions persuasive in conducting an elements-versus-means analysis of statutory alternatives). The Arizona pattern jury instructions for a violation of § 13-3415 state:

> "Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use or designed for use in [planting] [propagating] [cultivating] [growing] [harvesting] [manufacturing] [compounding] [converting] [producing] [processing] [preparing] [testing] [analyzing] [packaging] [repackaging] [storing] [containing] [concealing] [injecting] [ingesting] [inhaling] or otherwise introducing (name of drug) into the human body.

34.15 − Possession of Drug Paraphernalia, Revised Arizona Jury Instructions (Criminal) 5th, https://www.azbar.org/media/jl5lzdpl/2019-raji-criminal-5th-ed.pdf.

The notes following the pattern jury instructions state that the language in brackets should be used "as appropriate to the facts" but do not provide instructions regarding what should be done with the language in parentheses or what underlining signifies. *Id*. Although the meaning is somewhat unclear, comparing the notes' instructions for the options in brackets versus the "name of drug" underlined and in parentheses suggests that while a court should select an appropriate verb from the options in brackets, the "name of drug" should be included as a necessary factual finding on which the jury must unanimously agree. *See Martinez-Lopez*, 864 F.3d at 1041 (finding model jury instructions to be persuasive in conducting a divisibility analysis and noting that "California jury instructions require a jury to fill in a blank identifying 'a controlled substance'—i.e., only one—demonstrating that the jury must identify and unanimously agree on a particular controlled substance"). Furthermore, in *Lopez-Marroquin*, we interpreted the fact that jury instructions "could be consistent" with *two* statutory alternatives—unlike here given the singular phrasing of "(name of drug)"—as suggesting that the alternatives were *means*, not *elements*:

> [T]he California Criminal Jury Instructions ("CALCRIM") could be consistent with principal *or* accessory after the fact liability. CALCRIM 1820 (2020) ("To prove that the defendant is guilty of this crime, the People must prove . . . 1. The defendant drove someone else's vehicle without the owner's consent; AND 2. When the defendant drove the vehicle, (he/she) intended to deprive the

owner of possession or ownership of the
vehicle for any period of time.").

9 F.4th at 1073.

The Arizona Court of Appeals has upheld a conviction
under § 13-3415 in a case in which "the jury was instructed
that possession of drug paraphernalia requires proof the
defendant used or possessed with the intent to use drug
paraphernalia to analyze methamphetamine and the item was
drug paraphernalia." *State v. Kelly*, No. 1 CA-CR 14-0671,
2015 WL 4538447, at *3 (Ariz. Ct. App. July 28, 2015). By
concluding that this instruction was proper, the *Kelly* court
suggested that drug type (methamphetamine) is an element
that the jury must find unanimously. This suggestion is
bolstered by the Supreme Court's reasoning in *Mathis*,
which treated a jury instruction as supporting a conclusion
that the pertinent statute was divisible when that jury
instruction, like the one in this case, referenced only one
drug as opposed to the entire list in the statute or an
"umbrella" term. 579 U.S. at 519. As the Court explained,
"an indictment and jury instructions could indicate, by
referencing one alternative term to the exclusion of all
others, that the statute contains a list of elements, each one
of which goes toward a separate crime." *Id.*

Taking a "peek" at the record of conviction, *see Lopez-
Marroquin*, 9 F.4th at 1073 (citing *Mathis*, 579 U.S. at 518),
we conclude that the documents in this case establish that a
specific type of drug is identified in Romero-Millan's plea
agreement and the corresponding information to which he
pled guilty. They explicitly identify cocaine as the substance
for which he pled guilty to possessing. *See Mathis*, 579 U.S.
at 519; *Dominguez*, 975 F.3d at 738 (citing as supporting
divisibility the fact that "the charging documents refer to one

of the [statutory] alternatives to the exclusion of the other, though the judgment . . . refers to both").

Based on these considerations, we conclude that drug type is an element of the offense under § 13-3415. That statute is divisible as to drug type, so the BIA did not err in applying the modified categorical approach, discussed above, at 17–18.

Romero-Millan pled guilty to "us[ing] or possess[ing] with intent to use, *cocaine* drug paraphernalia" per Count 3 of the information. That is an acceptable document for determining which drug formed the basis of his conviction. *See Marcia-Acosta*, 780 F.3d at 1250 (citing *Shepard*, 544 U.S. at 26). The BIA properly applied the modified categorical approach to conclude that Romero-Millan was convicted of a violation of § 13-3415 involving cocaine. That substance is also on the federal list of controlled substances. As a result, Romero-Millan is ineligible for adjustment of status and inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II).

## IV.    Conclusion

We deny the petitions for review filed by Romero-Millan and by Hernandez Cabanillas. We conclude that the two Arizona criminal statutes involved in this case, A.R.S. §§ 13-3408 and 13-3415, are both divisible. These two petitioners were convicted of controlled substance offenses that properly supported the orders of removal entered against them.

**PETITIONS FOR REVIEW DENIED.**