IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

───────────────────────────

ROBERT VANDE KROL, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

SUPERSTITION FIRE & MEDICAL, *Respondent Employer,*

BENCHMARK INSURANCE, *Respondent Insurance Carrier.*

No. 1 CA-IC 22-0046
FILED 7-11-2023

───────────────────────────

Special Action - Industrial Commission
ICA Claim No. 20210280125
Carrier Claim No. 7138292
The Honorable Amy L. Foster, Administrative Law Judge

**AWARD SET ASIDE**

───────────────────────────

COUNSEL

Taylor & Associates, PLLC, Phoenix
By Thomas C. Whitley, Nicholas C. Whitley
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Norton & Brozina, PC, Phoenix
By Christopher S. Norton
*Counsel for Respondent Employer and Respondent Carrier*

**OPINION**

Judge Michael S. Catlett delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

C A T L E T T, Judge:

¶1         Arizona's workers' compensation system provides covered firefighters with benefits for workplace injuries.  Yet not all firefighting injuries are alike.  Physical injuries stemming from perceptible dangers (like burns or smoke inhalation from rushing into a burning building) are easily provable.  Occupational diseases stemming from imperceptible dangers (like cancer from inhaling carcinogens or other noxious chemicals) are more difficult (if not impossible) to prove, particularly as to causation.

¶2         So, starting in 2001 the Arizona Legislature made it easier for firefighters (and peace officers) to satisfy causation in some circumstances.  It did so by granting firefighters a statutory presumption that certain diseases, including brain cancer, are compensable, provided the firefighter satisfies certain elements.  *See* A.R.S. § 23-901.01 (2017); A.R.S. § 23-901.09 (2021).  The legislature, in 2017, changed the law to provide additional guidance about the amount and nature of the evidence needed to rebut the presumption.  *See* 2017 Ariz. Sess. Laws ch. 318 (1st Reg. Sess.) (H.B. 2161).  And in 2021, the legislature again changed the law, further relaxing the showing required to invoke the presumption and heightening the standard required to rebut it.  *See* 2021 Ariz. Sess. Laws ch. 229 § 6 (1st Reg. Sess.) (S.B. 1451).  We refer to the 2017 version of the statutory framework as the "2017 statute" and the 2021 version as the "2021 statute."

¶3         This appeal turns on whether the 2021 statute applies when the listed injury date falls before, but the evidentiary hearing occurs after, the effective date of that statute.  We hold the 2021 statute applies, which does not result in an impermissible retroactive application.  We, therefore, set aside the Administrative Law Judge's ("ALJ") award of no compensation and remand for further proceedings under the 2021 statute.

**FACTS AND PROCEDURAL BACKGROUND**

¶4         Superstition Fire and Medical ("Superstition") employed petitioner Robert Vande Krol ("Vande Krol") as a firefighter and engineer.

2

After eighteen years of service, at the age of fifty, he was diagnosed with oligodendroglioma, a rare form of brain cancer.

¶5            Vande Krol underwent brain surgery (a right craniotomy) on October 26, 2020, which successfully removed the tumor.  Post-surgery, Vande Krol experienced headaches, memory problems, loss of some peripheral vision, and vertigo.  In January 2021, Vande Krol submitted a worker's report of injury, listing his date of injury as October 28, 2020.  Superstition's insurer, Benchmark Insurance Company ("Benchmark"), denied the claim.  Vande Krol requested a hearing with an ALJ.  The Industrial Commission obliged, appointing an ALJ who held an evidentiary hearing over three non-consecutive days beginning on October 5, 2021.

¶6            Following those hearings, the ALJ issued a written decision denying Vande Krol's workers' compensation claim.  The ALJ concluded that because there was no provision in the 2021 statute stating the changes made therein apply retroactively, the 2021 statute applied only to injuries occurring after the 2021 statute's effective date.   Then, applying the 2017 statute instead, the ALJ concluded Vande Krol failed to show he was exposed to known carcinogens causing his specific type of brain cancer.  Vande Krol filed a Request for Review, after which the ALJ affirmed her original ruling.

¶7            Vande Krol timely petitioned for review.  We have jurisdiction under A.R.S. § 12-120.21(B), A.R.S. § 23-943(H), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶8            When reviewing a worker's compensation award, we defer to the ALJ's factual findings.  *Special Fund Division v. Indus. Comm'n*, 252 Ariz. 267, 269 ¶ 6 (App. 2021).  The interpretation and application of a statute presents a question of law we review *de novo*.  *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 485 ¶ 11 (2022).

## I.    The Statutory Framework

### A.    The 2017 and 2021 Statutes

¶9            Arizona's workers' compensation laws grant employees compensation for personal injury or death from any accident arising out of and in the course of employment.  Ariz. Const. art. 18, § 8.  An occupational disease is considered a compensable injury provided a claimant satisfies six listed elements.  *See* A.R.S. § 23-901.01(A).  But due to their increased risk of

exposure to known carcinogens, since 2001, the legislature has required firefighters (and peace officers) to satisfy a lesser burden for certain diseases, including brain cancer. *See* A.R.S. § 23-901.01(B)–(C). The legislature amended the statutory framework for firefighters several times over the past two decades, including, as relevant here, in 2017 and 2021.

**¶10**         Under the 2017 statute, a firefighter is entitled to a presumption that certain diseases are occupational diseases "arising out of employment" if, as relevant here, the firefighter:

1. passed a physical examination before employment and the examination did not indicate evidence of cancer.

2. was assigned to hazardous duty for at least five years.

3. was exposed to a known carcinogen as defined by the international agency for research on cancer and informed the department of this exposure, and the carcinogen is reasonably related to the cancer.

A.R.S. § 23-901.01(C) (2017). This presumption "may be rebutted by a preponderance of the evidence that there is a specific cause of the cancer other than an occupational exposure to a carcinogen[.]" A.R.S. § 23-901.01(F) (2017).

**¶11**         In 2021, the legislature again amended the statute by eliminating one element for invoking the presumption under the 2017 statute. To qualify for the presumption under the 2021 statute, the evidence must show the firefighter:

1. passed a physical examination before employment and the examination did not indicate evidence of cancer.

2. was assigned to hazardous duty for at least five years.

A.R.S. § 23-901.09(B) (2021).[1] The presumption may now only be overcome with "*clear and convincing evidence* that there is a specific cause of the cancer other than an occupational exposure to a carcinogen[.]" A.R.S. § 23-901.09(E) (2021) (emphasis added).

---

[1]     Both statutes require a firefighter prove an additional element if the firefighter is diagnosed with certain enumerated diseases not relevant here.

### B.    Uncontested Elements

¶12        Here, the ALJ found and both parties agree Vande Krol satisfied the first two elements in the 2017 statute—the only two elements required in the 2021 statute.  Vande Krol was a firefighter who passed a physical examination before employment.  He continuously underwent yearly physicals that were reasonably aligned with the national fire protection association standard on comprehensive occupational medical programs for fire departments.  None of those exams revealed cancer.  Finally, he was assigned to hazardous duty for more than five years before his diagnosis.  So, we agree Vande Krol satisfied two of the three elements in the 2017 statute and each relevant element in the 2021 statute.  But the parties disagree over which version of the statute applies.  If the 2021 statute applies, Vande Krol is entitled to the statutory presumption.  It is less clear he gets the presumption if the 2017 statute applies.  Thus, whether the 2021 statute applies is the question to which we now turn.

## II.    The 2021 Statute Applies

### A.    Retroactivity Framework

¶13        Under Arizona law, when the legislature enacts a statute, the default rule is that the statute, once effective, applies only prospectively.  In other words, courts apply a "canon of construction" that "statutes are presumed to have a prospective and not a retroactive effect."  *Gietz v. Webster*, 46 Ariz. 261, 267 (1935).  That presumption, which we refer to in shorthand as the presumption against retroactivity, "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).  The presumption protects due process by ensuring fair notice of the law, and equal protection by protecting disfavored groups from post-hoc discrimination.  *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1607 (2020).

¶14        There are at least three instances, however, where the presumption against retroactivity does not come into play, even if a change occurs after events giving rise to a lawsuit.  The first is when the legislature expressly declares the statute applies retroactively.  The second is when a statute impacts a judicial, administrative, or other proceeding that has not yet occurred.  And the third is when the enactment is procedural and does not affect substantive rights (or at least such rights that have vested).  We describe each instance in more detail, and then explain why the 2021 statute applies here.

### 1. Express Language

¶15 Like other secondary canons of construction, the presumption against retroactivity does not apply when the legislature expressly and plainly indicates the new statute applies to a given situation. The legislature has written this notion into positive law, instructing that "[n]o statute is retroactive *unless expressly declared therein*." A.R.S. § 1-244 (emphasis added). Thus, the legislature may give a statute retroactive effect by "direct[ing] that it applies retroactively." *State v. Williams*, 254 Ariz. 516, __ ¶ 11 (App. 2023).

¶16 How do we know the required language when we see it? The legislature need not use magic words. *See Schuster v. Schuster*, 42 Ariz. 190, 199 (1933). Instead, "[a]ny language that shows a legislative purpose to bring about [retroactivity] is sufficient." *Id.* We use the same rules of statutory construction we ordinarily use. This "requires us to determine the meaning of the words the legislature chose to use." *S. Ariz. Home Builders Ass'n v. Town of Marana*, __ Ariz. __, 522 P.3d 671, 676 ¶ 31 (2023). "We do so . . . according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *Id.*

¶17 Here is the twist. Typically, when the plain meaning of the words employed are ambiguous, we have several secondary interpretative tools at our disposal. *See Romero-Millan v. Barr*, 253 Ariz. 24, __ ¶13 (2022) ("When a statute is ambiguous, we consult 'secondary interpretation methods[.]'") (cleaned up). But if the statutory language is unclear as to retroactivity, we use one—and just one—interpretive tool: we employ the presumption against retroactivity. *See Garcia v. Browning*, 214 Ariz. 250, 252–53 ¶ 11 (2007), *superseded by statute as stated in State v. Montes*, 226 Ariz. 194 (2011) ("In A.R.S. § 1–244, the legislature has plainly directed that we are not to look to external sources, such as legislative history, to determine whether a statute is to be applied retroactively."); *see also Biden v. Nebraska*, No. 22-506, 600 U.S. __, 2023 WL 4277210 *16 (June 30, 2023) (Barrett, J., concurring) (describing the "presumption against retroactivity" as "a strong-form canon counsel[ing] a court to *strain* statutory text to advance a particular value").

### 2. Non-Retroactive Application

¶18 There are other times when a statute can apply to facts occurring before its effective date even if the statute does not unambiguously say that it should be applied retroactively. One is when the

statute, while post-dating the events at issue, is not actually applied retroactively.

¶19     Saying "this new statute cannot be applied retroactively" raises a question—what underlying events or facts determine whether the statute is being applied retroactively?  It is common, for example, for the legislature to pass a statute impacting how a judicial or administrative proceeding is conducted.  And, at times, such a statute's effective date lands during ongoing proceedings.  One might be tempted to say there that the statute cannot apply because the statute post-dates the start of litigation or the events leading to it, resulting in a retroactive application.  Yet that is not how this Court typically handles the situation.  Rather, when that occurs, we allow the new statute to apply immediately.  *See Wilco Aviation v. Garfield*, 123 Ariz. 360, 362 (App. 1979) ("[S]tatutory changes in procedures or remedies may be applied to proceedings already pending[.]"); *State Comp. Fund of Ariz. v. Fink*, 224 Ariz. 611, 613 ¶ 9 (App. 2010) ("New rules of procedure are often applied to actions already pending.").  Doing so recognizes that "[a]pplication of a statute in a particular situation is not necessarily 'retroactive' simply because it relates to antecedent facts." *Fink*, 224 Ariz. at 613 ¶ 9.

¶20     Distilled down, we apply a rather straightforward framework:  applying a new procedural statute to a future procedure is not applying the statute retroactively and is generally permissible.  *See State v. Perez-Gutierrez*, __ Ariz. ___, 2023 WL 3312385, at *1 ¶7 (App. May 9, 2023) (applying a new statute regulating sentencing procedures when the effective date occurred before sentencing); *Fink*, 224 Ariz. at 613 ¶¶ 6–11 (applying a 2007 statute regarding intervention to a 2006 action arising from a 2004 accident); *Garcia*, 214 Ariz. at 253 ¶ 12 ("If the provisions of Senate Bill 1145 apply only to the conduct of the trial, . . . then application of the new justification defense statutes is required."); *but see* A.R.S. § 1-246 ("When the penalty for an offense is prescribed by one law and altered by a subsequent law, . . . the offender shall be punished under the law in force when the offense was committed."); A.R.S. § 12-505 (setting special rules for applying changes in statutes of limitation).  If, however, a new statute would change a procedure already completed, the new statute does not invalidate such procedure.  *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 549 ¶ 17 (2005) ("[C]hanges in modes of procedure do not invalidate completed procedural actions valid under the law in effect at the time they were taken.").

### 3.      Procedural Enactments

¶21      There are also "judge-made exceptions to the general statutory rule about retroactivity."  *Id.* at 548 ¶ 12.  One such exception is that "[e]nactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively."  *Aranda v. Indus. Comm'n*, 198 Ariz. 467, 470 ¶ 11 (2000).  Procedural enactments may be applied retroactively "because litigants have no vested right in a given mode of procedure."  *Id.*; *Mia. Copper Co.*, 17 Ariz. at 193 ("[T]here is no vested right in the modes of procedure.").  Thus, while a new procedural statute does not invalidate procedures already completed (*see supra* ¶ 20), it can be applied in situations where doing so might otherwise be thought of as retroactive.  For example, a statutory change to a procedural rule after a procedure is completed might not be valid reason to reverse a judgment on appeal, but the new rule could apply to proceedings on remand if the judgment is otherwise set aside.

### B.      Application to the 2021 Statute

### 1.      The 2021 Statute's Text

¶22      The ALJ applied the 2017 statute, in part, because "[t]here is no provision in [the 2021 statute] that the changes are retroactive."  The ALJ looked to the date of injury listed in Vande Krol's application for benefits (October 28, 2020) in determining whether retroactivity is implicated.  Because the date of injury occurred before the 2021 statute's effective date, the ALJ concluded that using the 2021 statute would result in an impermissible retroactive application.  But the ALJ's analysis overlooked that the 2021 statute, in A.R.S. § 23-901.09(C)(2), expressly lays out when it applies (and by implication when it does not); application does not hinge on the date of injury.

¶23      In deciding when the 2021 statute applies, we start with the plain meaning of its text.  The legislature directed that the presumption therein "applies to . . . [f]ormer firefighters . . . who are sixty-five years of age or younger and who are diagnosed with [brain cancer] not more than fifteen years after the firefighter's last date of employment as a firefighter[.]"  A.R.S. § 23-901.09(C)(2).  Thus, application of the 2021 statute turns on: (1) the firefighter's age at the time of diagnosis and (2) a maximum length of separation from employment at the time of diagnosis.  The legislature did not except application where the date of injury (however one defines it) occurred before the 2021 statute's effective date.

¶24        Nonetheless, the ALJ focused solely on the date of injury listed in Vande Krol's claim for benefits. Doing so is inconsistent with the legislature's directive on when the 2021 statute applies. Tellingly, the date of injury Vande Krol listed is the date he reported his diagnosis to his employer, not the date he underwent surgery, was diagnosed with cancer, or started experiencing side effects, demonstrating the arbitrariness of using a firefighter's listed date of injury, rather than the criteria the legislature chose, in determining retroactivity.

¶25        The legislature can (and should) include provisions in statutes defining their application. *See* A.R.S. § 1-244. When it does, courts and administrative agencies should start there. They should not, instead, work in the opposite direction, using alternative criteria combined with secondary tools of interpretation to alter when a statute applies. But that is what happened here when the ALJ foreclosed the 2021 statute's application based on the listed date of injury (again, not one of the criteria in the statute) and the presumption against retroactivity.

¶26        A hypothetical scenario shows why pegging the presumption against retroactivity to the date of listed injury is problematic. Imagine a firefighter who is 62 and retired 5 years ago. In 2023, he is diagnosed with brain cancer, which he thinks he can trace to a chemical fire in 2001 (although he cannot be sure). When he applies for benefits in 2023, he lists his date of injury as the date of that fire, not knowing the legal implications of doing so. Under the plain text of the 2021 statute, it should apply to the firefighter's claim and be used to determine whether he is entitled to benefits—after all, he is under 65 and has been separated from employment for less than 15 years. *See* A.R.S. § 23-901.09(C)(2).

¶27        Under Benchmark's view, adopted by the ALJ, the firefighter's claim would be subject, instead, to the version of the statute existing in 2001, despite that the injury was undiscovered for years and the date of actual injury is unknowable. Using the date of listed injury and the presumption against retroactivity excises a portion of the class of individuals to whom the 2021 statute would otherwise apply—those who unwittingly list a date of injury prior to the 2021 statute's effective date. This does more than *strain* statutory text; it overrides it. The better course is to refrain from using a secondary tool of interpretation to alter the legislature's unambiguous text (which implements the legislature's policy choice about when a statute applies), particularly when applying the text in a particular proceeding does not implicate retroactivity (*see infra* ¶¶ 29-32).

¶28 At the time of his hearing, Vande Krol was 51 and was diagnosed with brain cancer in 2020, less than 15 years before ending his employment. Under the statute's unambiguous text, the 2021 statute should have been applied to Vande Krol's proceedings. *Cf. Opati*, 140 S. Ct. at 1608–09 (concluding the presumption against retroactivity was overcome when Congress allowed certain plaintiffs to invoke a new cause of action in "Prior Actions" and "Related Actions").

### 2. The 2021 Statute's Non-Retroactive Application

¶29 Applying the 2021 statute to Vande Krol's proceedings based on the criteria in the text—age and years of separation (*see* A.R.S. § 23-901.09(C)(2))—does not violate retroactivity principles because the 2021 statute became effective before the start of Vande Krol's hearings.

¶30 The 2021 statute deals primarily with the showing the parties must make to obtain or defeat the presumption that certain cancers are work-related. *See generally* A.R.S. § 23-901.09. At the earliest, the statute comes into play in a particular proceeding once an ALJ begins to hear and consider the parties' evidence during a formal hearing. The Governor signed the 2021 statute into law on April 14, 2021, and the 2021 statute became effective on September 29, 2021. Vande Krol's hearing started on October 5, 2021, almost six months after the 2021 statute's passage and about a week after its effective date. This, therefore, is a situation where new rules should have been applied "to [an] action[] already pending." *Fink*, 224 Ariz. at 613 ¶ 9; *see also In re Dos Cabezas Power Dist.*, 17 Ariz. App. 414, 420 (1972) ("Every right or remedy created solely by a modified statute disappears or falls with the modified statute *unless carried to final judgment before the repeal or modification*[.]"(emphasis added)).

¶31 This situation bears a strong resemblance to that in *Fink*. The plaintiff there sued a tire manufacturer in 2006, arising out of a motor vehicle accident in 2004. *See Fink*, 224 Ariz. at 612 ¶ 1. One year into the litigation, the legislature amended the workers' compensation laws (specifically, A.R.S. § 23–1023(C)) to "provid[e] a workers' compensation carrier or self-insured employer the right to intervene in personal injury actions to protect their interests." *Id.* ¶ 3. In 2009, the plaintiff's insurance company moved to intervene, and the tire manufacturer successfully opposed the request by convincing the superior court that applying a 2007 statute to a 2006 action arising out of a 2004 accident would be an impermissible retroactive application. *Id.* at 613 ¶¶ 6–8. This Court disagreed, explaining that "[t]he intervention applies to future events—preparation for trial and trial—and does not change or alter the significance

of past events." *Id.* ¶ 8. Thus, "on a common sense level, application in 2009 of the 2007 amendment is not a retroactive application." *Id.*

**¶32**        The same goes here. The 2021 statute, when it became effective, applied to a future event—Vande Krol's evidentiary hearing—and did not change or alter the significance of past events. The 2021 statute did not alter anything previously occurring in the proceedings or the facts giving rise to Vande Krol's claim. Simply put, applying the 2021 statute to a later hearing "is not a retroactive application." *Id.*; *see also Landgraf*, 511 U.S. at 273 ("[I]n many situations, a court should 'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit." (citation omitted)).

### 3.      The 2021 Statute's Procedural Nature

**¶33**        There is another reason the 2021 statute should have been applied: the statute is procedural in nature and "do[es] not alter or affect earlier established substantive rights[.]" *Aranda*, 198 Ariz. at 470 ¶ 11. Our supreme court has clarified that a substantive law "creates, defines and regulates rights," whereas a procedural law "prescribes the method of enforcing the right or obtaining redress[.]" *State v. Birmingham*, 96 Ariz. 109, 110 (1964). In the workers' compensation context, a procedural statute serves "to facilitate the manner and means by which benefits are administered." *Aranda*, 198 Ariz. at 470–71 ¶ 13. Procedural statutes "do not create, define, or regulate the right to receive benefits." *Id.* at 471 ¶ 13.

**¶34**        The 2021 statute regulates how firefighters obtain redress for occupational diseases. The 2021 statute does not create a new right to redress; firefighters have long been entitled to redress for occupational diseases, including in the 2017 statute. The 2021 statute does not define the right to receive benefits. The 2021 statute does not alter the definition of the term "occupational disease" in A.R.S. § 23-901(13)(c), the definition of the broader term "[p]ersonal injury by accident arising out of and in the course of employment" in A.R.S. § 23-901(13), or the general right to workers' compensation in A.R.S. § 23-1021.

**¶35**        The 2021 statute also does not sufficiently regulate the right to receive benefits to be considered a substantive law. The ultimate presumption afforded to firefighters under the 2021 statute is the same as that afforded to them under the 2017 statute, even if there are now less elements to obtain that presumption. As relevant here, the 2021 statute did two things: it removed one requirement under the 2017 statute for obtaining the presumption, and it increased the evidentiary burden for

overcoming it (from a preponderance of the evidence to clear and convincing evidence). These changes—although undoubtedly important to those seeking or opposing benefits—are far enough removed from the core right to benefits to avoid the substantive label.

¶36 Arizona courts have consistently explained that legal presumptions are procedural in nature; we see no reason to depart here. *See State v. Grilz*, 136 Ariz. 450, 455 (1983) ("[T]he presumption of sanity is a procedural device[.]"); *State v. Nihiser*, 191 Ariz. 199, 203 (App. 1997) ("We view presumptions as procedural, rather than evidentiary, concepts."); *Seiler v. Whiting*, 52 Ariz. 542, 549 (1938) ("A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue" (citation omitted)); *see also* Ariz. R. Evid. 301.

¶37 This does not mean that a presumption can never be substantive. The Fifth Circuit has provided guidance—albeit in a different context (choice of law)—on when a presumption is procedural and when it is substantive. In *Maryland Casualty Co. v. Williams*, the court described "the general rule that presumptions are procedural in nature." 377 F.2d 389, 394 (5th Cir. 1967). But a presumption is substantive when it is "conclusive," which "may be described as one which is final and irrebuttable, an inference which must be drawn from proof of given facts which no evidence, however strong, can overcome." *Id.* On the flip side, "a procedural presumption is one which is rebuttable, it operates to require the production of credible evidence to refute the presumption, after which the presumption disappears." *Id.*

¶38 We agree with the Fifth Circuit's framework and apply it here. The 2021 statute contains a *procedural* presumption—the presumption is rebuttable and disappears with clear and convincing evidence of "a specific cause of the cancer other than an occupational exposure to a carcinogen." A.R.S. § 23-901.09(E).

¶39 Our conclusion is consistent with the *en banc* Sixth Circuit's analysis in *Combs v. Commissioner of Social Security*, 459 F.3d 640 (6th Cir. 2006). There, the court considered "whether a change in a rule governing the adjudication of social security disability benefits claims that is applied as of its effective date to all pending cases has an impermissibly retroactive effect." *Id.* at 642. The new rule at issue "required more detailed proof of disability from obese claimants by eliminating a presumption of disability for obesity." *Id.* The *en banc* Sixth Circuit concluded that the new rule was not impermissibly retroactive because the presumption was procedural. *Id.*

at 647.    While acknowledging that "the change may be outcome-determinative for some claimants," the court said the presumption was procedural because "[t]he substantive requirements for disability eligibility have not changed, only the way in which the agency goes about determining whether they are present." *Id.*

¶40        Contrast the situation here with that in *Aranda*, where a statutory revision to the workers' compensation laws was substantive. The statute there suspended payment of workers' compensation to any employee who had "[b]een convicted of a crime and is incarcerated in any state, federal, county or city jail or correctional facility." 198 Ariz. at 470 ¶ 9. Our supreme court said the statute was substantive because it could "eliminate a claimant's legal authorization to receive benefits based on his incarcerated status." *Id.* at 471 ¶ 15. The effect of the 2021 statute—further clarifying how to process a claim for benefits in a specific factual context (occupational diseases impacting firefighters)—is a far cry from the statute's effect in *Aranda*—permanently eliminating vested benefits for an entire class of workers' compensation recipients.

¶41        Even if the 2021 statute could be deemed substantive, it still applies because it did not impact a right that vested before the 2021 statute's effective date. "[A] substantive legal right may be subject to retroactive impairment before it becomes a vested right." *Id.* at 471 ¶ 16. A right cannot be vested if it remains contingent. *See Steinfeld v. Nielsen*, 15 Ariz. 424, 465 (1913). Rights remain contingent "when they are only to come into existence on an event or condition which may not happen[.]" *Id.*

¶42        In the workers' compensation arena, a "substantive property right in workers' compensation payments vest[s] once the Industrial Commission's Findings and Award became final." *Aranda*, 198 Ariz. at 473 ¶ 27. To the extent Benchmark (as the insurer) had a vested right in the proceedings, the best we can imagine is a vested right in successfully defending against monetary payment under the insurance policy. But even if Benchmark had such a right, the right had not vested vis-à-vis Vande Krol's claim because his formal hearing had not begun, let alone had any award of non-compensation become final, when the 2021 statute became effective. Pre-hearing, any right to successfully defend against Vande Krol's claim was subject to several events and conditions which may not have happened, making any such right contingent. *See id.* at 471 ¶ 16.

**CONCLUSION**

¶**43**　　　　We conclude the 2021 statute applies to Vande Krol's workers' compensation claim, and we, therefore, need not address whether the ALJ correctly interpreted the 2017 statute. Because the ALJ did not apply the 2021 statute, we set aside the award of non-compensation. The parties and the ALJ all correctly agreed Vande Krol satisfied the elements necessary to invoke the presumption in the 2021 statute. We remand to allow the ALJ to determine in the first instance whether Benchmark presented clear and convincing evidence to rebut the presumption. *See* A.R.S. § 23-951(B); *Kennecott Copper Corp. v. Indus. Comm'n*, 62 Ariz. 516, 521–22, 528 (1945) (reviewing court can only set aside the award and must assume on rehearing due consideration will be given to facts).



AMY M. WOOD • Clerk of the Court
FILED:　AA